SYSTEMS EXPLORATION, INC.

v.

The UNITED STATES.

No. 341–83C.

United States Claims Court.

June 11, 1985.

Ronald J. Backes, San Diego, Cal., for plaintiff.

George M. Beasley, III, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Florence Nakakuni, Dept. of the Navy, Washington, D.C., of counsel.

## OPINION

YOCK, Judge.

This contract case comes before the Court challenging the denial by the Government contracting officer of the plaintiff's claim for reimbursement of dependent children's school tuition under Contract N00604–81–C–0265 ('0265). The defendant has moved for summary judgment, and the plaintiff has cross-moved for summary judgment. For the reasons set out herein, the defendant's motion for summary judgment is granted, and the plaintiff's cross-motion is denied.

### Facts

On August 14, 1981, the U.S. Department of the Navy awarded the plaintiff a contract to furnish services and supplies for on-site preventive and corrective maintenance of the Ocean Surveillance Information System, Baseline System, Graphics and Communications Data Processing Systems, and peripheral equipment at the Fleet Ocean Surveillance Information Facility, Western Pacific, Kami Seya, Japan. Mr. Robert Katzoff, an employee of the plaintiff, was assigned as a field engineer to perform work on the contract from October 1981 until May 1983. Under the terms of the contract, Mr. Katzoff was authorized to move his dependents, his wife and three minor children, to Kami Seya, Japan.

After moving his family to Japan, Mr. Katzoff enrolled his dependent school age children at the Sagamibara Elementary School, Camp Zama, Japan. The tuition for the second semester of school year 1981–82 amounted to $2,991.52 for Mr. Katzoff's two school age children. The tuition for the 1982–83 school year totalled $9,866.60

for Mr. Katzoff's now three school age children. The plaintiff reimbursed Mr. Katzoff for these expenses and forwarded corresponding invoices to the contracting officer. These invoices sought payment of $15,686.90, representing $12,858.12 for tuition costs plus $2,828.78 for general and administrative expenses.

By letter dated April 12, 1982, the plaintiff submitted a claim for $2,991.52, representing the school tuition costs for the 1981–82 school year, to the contracting officer for reimbursement of Mr. Katzoff's dependent children's school tuition as an allowable cost under the contract. On June 1, 1982, the contracting officer issued a final decision denying the plaintiff's claim.

By letter of January 4, 1983, the plaintiff again submitted a claim for additional school tuition costs for the 1982–83 school year to the contracting officer, pursuant to the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, seeking reimbursement for Mr. Katzoff's dependents' tuition. On February 25, 1983, the contracting officer wrote the plaintiff to advise him that a final decision had already been rendered on his claim and that no further action would be taken by the contracting officer. Thereafter, the plaintiff sought redress in this Court.

### Discussion

Both parties agree that no material facts are in dispute and that the matter at issue is one of contract interpretation. The plaintiff asserts that it is entitled to be reimbursed under its contract with the Government for the school tuition costs it incurred when its employee (Mr. Robert Katzoff) enrolled his three dependent children in a private elementary school in Japan. In support of its argument, the plaintiff points to Item No. 0004 and Special Provision H24 of the contract, as well as Chapter 15 of the Defense Acquisition Regulations (DAR) dealing with allowable costs. The defendant, on the other hand, contends that the costs incurred are not reimbursable under the terms of the contract and that the DAR cost provisions are

inapplicable when the contract specifically states which costs are allowable under the contract.

The contract at issue is somewhat of a hybrid in that it is basically a fixed price contract for preventive and corrective services (and supplies) to be performed by the plaintiff utilizing the services of two employees as contract engineers. In addition, however, the contract also allowed certain costs as reimbursable items.

Item No. 0001, of Contract '0265, deals with "services required for on-site preventive and corrective maintenance," which are to be provided by the plaintiff at a firm fixed price of $8,794.75 per month for a twelve month period.

Item No. 0004, of Contract '0265, is a cost-reimbursable provision with a ceiling of $51,450, which covers:

Travel, personnel relocation, training and transportation costs in support of Item No. 0001 shall be reimbursed to the contractor *in accordance with Section H24* and shall be chargeable to this contract item. [Emphasis supplied.]

Special Provision H24, entitled "Consideration and Payment," referencing Item No. 0004 of the contract, provides in pertinent part:

b. Monthly rates under Items Nos. 0001, 0101 and 0201 applicable to services of assigned site engineers shall include consideration for all leave, salaries/wages, per diem, training, insurance and other costs in connection with services to be rendered hereunder. The contractor shall be reimbursed for travel under Item No. 0004 in the overseas area only when such travel is directly in connection with performance of maintenance work pursuant to the requirements of this contract and is directed and certified by the COTR.

c. Overtime rates shall be paid only for the number of hours the assigned site engineer is performing maintenance services outside the PPM, and shall not be paid portal to portal.

d. Hourly rates applicable to on-call services under Item Nos. 0002, 0102 and 0202 shall be paid portal to portal. No payment shall be made by the Government for time spent by contractor maintenance personnel after arrival at the government site while not engaged in maintenance activities, such as delays encountered while waiting for arrival of additional contractor maintenance personnel and/or delivery of parts.

e. Relocation expenses applicable to overseas assignments shall be reimbursed to the contractor at cost, and shall include travel and per diem of the assigned field engineer and his dependents (Per diem shall not exceed thirty (30) calendar days after arrival at the overseas work site), shipment of one (1) automobile per overseas movement, and shipment of household goods (not to exceed 11,000 pounds, including one express shipment not to exceed 1,000 pounds). Advance trips to locate living quarters or temporary lodging will not be reimbursed by the Government.

f. Reimbursement for training shall be limited to that training required to maintain additional equipment that may subsequently be added to the inventory, enhancements and foreign attachments, and shall not apply to training requirements set forth on Attachment I, (Equipment List) which shall be paid for by the contractor.

g. Travel, transportation and per diem shall be reimbursed to the contractor as follows:

1. Air travel shall be at the standard commercial economy fare.

2. Car rental, mileage rates and per diem shall be as set forth in the Department of Defense Civilian Joint Travel Regulation current at the time services are performed.

Finally, Special Provision H1, entitled "Authorized Privileges for Contractor Personnel in Overseas Theaters," provides that:

a. The Government shall make available at navy installation in Japan subject to the individual capability or limitation of the installation site commander, as well as the controlling provisions of the applicable Inter-Governmental Agreement and Intra-Governmental Regulations, the following items of logistic support to contractor U.S. citizen personnel performing services hereunder to include but not limited to: Commissary privileges, Officer or NCO/EM Clubs, Military Exchange, U.S. Forces identification card, *dependent school on a space available, tuition paying basis*, registration of POV/operator's license, military postal service for personal mail and business material, local government transportation when individual is on official government business and transportation has been requested by proper authority, recreation services subject to curtailment by the local commander when facilities are limited, American Express and Chase Manhattan Military banking facilities, transient billets at locally established rates when the individual is on official business and in possession of valid government travel orders, mortuary services as authorized, Status of Forces stamp in passport, Credit Union facilities servicing the area in which the individual is stationed, medical care at locally established rates, emergency dental care at locally established rates.

b. Permanent family housing or bachelor government quarters are not included as items of logistic support. [Emphasis supplied.]

 With the above provisions of the contract in mind, it is clear that the plaintiff has relied on the cost reimbursable provisions of the contract (Item No. 0004 and Special Provision H24) to the exclusion of other pertinent provisions in the contract—namely the "Authorized Privileges for Contractor Personnel in Overseas Theaters" provision (Special Provision H1). Special Provision H1(a) states in clear, concise language that dependent schools will be made available to the plaintiff's employees' dependents on a space-available, *tui-*

*tion-paying basis.* No other provision in the contract directly addresses the dependent children's school tuition issue. It is thus clear that the parties, at the time of contracting, agreed that dependent children's school tuition would not be paid by the Government. The plaintiff's argument that Item No. 0004 and Special Provision H24, read together, provide for reimbursement of this cost item renders Special Provision H1(a) meaningless. A basic rule of contract interpretation is that a contract must be read as a harmonious whole with no words rejected or treated as meaningless. *See Julius Goldman's Egg City v. United States,* 697 F.2d 1051 (Fed.Cir.), *cert. denied,* 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983); *A & K Plumbing & Mechanical, Inc. v. United States,* 1 Cl.Ct. 716 (1983). In *State of Arizona v. United States,* 216 Ct.Cl. 221, 235–36, 575 F.2d 855, 863 (1978), this Court's predecessor, the U.S. Court of Claims, held that:

> We follow the established general rules that provisions of a contract must be so construed as to effectuate its spirit and purpose, that it must be considered as a whole and interpreted so as to harmonize and give meaning to all of its provisions, and that an interpretation which gives a reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.

Adopting the plaintiff's contract interpretation advanced herein would render a pertinent part of the contract meaningless. It is thus manifest that, in reading the contract as a whole, the Government's interpretation is reasonable and the plaintiff's interpretation would conflict with the clear terms of the contract. The plaintiff's argument to the effect that H1(a) was intended to cover only privileges and not allowable costs is simply unreasonable.

In addition, the contract reflects the parties' intentions that project engineers are to be limited to the fixed price provisions of Item No. 0001 and to the reimbursable cost provisions contained in Item No. 0004 and Special Provision H24. A reading of Special Provision H24 reveals that it specifies only the following as allowable items:

(1) Overtime rates—H24(c);

(2) On-call service hourly rates—H24(d);

(3) Relocation expenses applicable to overseas assignments that include travel and per diem for the engineer and his dependents and shipment of an automobile and household goods—H24(e); and

(4) Reimbursement for certain training for the engineer—H24(f).

Nowhere is dependent tuition listed as an allowable cost. Moreover, it should be noted that, while Section H24(f) mentions dependents, it does so only in the context of allowing two specific cost items incurred by them, namely, travel and per diem. Neither term can be remotely construed to include school tuition. Accordingly, when the parties have specifically included as an allowable cost only certain items, the failure to include a closely related item provides evidence of the parties' understanding that the cost of such item is not to be reimbursable. *Olin Mathieson Chemical Corp. v. United States,* 179 Ct.Cl. 368, 395 (1967).

Further support for this position is found in the fact that in Item No. 0004 of its cost proposal, which was submitted to the Government, the plaintiff proposed a total of $51,450 for Item No. 0004 (travel, personnel relocation, training and transportation costs). This total was expressly incorporated into the contract, including $8,400, *i.e.,* "$4,200/year *single* × 2," (emphasis added), for "Housing Allowances." No amount was allowed for dependent tuition. In its letter/claim of April 12, 1982, the plaintiff conceded that, when it submitted its cost proposal to the Government, it intended to provide two single (unmarried with no dependents) engineers:

> At the time of submission of SEI's cost proposal and DD Form 633 dated 15 June 1981, SEI planned to provide two single Field Engineers at FOSIF WESTPAC. Because neither of these persons had dependents, education costs for depend-

ent children were not included in the cost proposal. The cost proposal included only the estimated costs for two single persons. If we had anticipated sending a married person with school age dependents, school tuition would have been included as part of the estimated costs.

Consequently, the plaintiff in no way put the Government on notice that it was construing the DAR cost principles to allow the cost of dependent tuition, notwithstanding the contractual limitations in Special Provisions H1 and H24. The plaintiff admittedly never even considered the possibility that, under its own personnel practices, it might have to reimburse its married engineers' dependents' tuition costs. In a similar context, the Court of Claims, in *Olin Mathieson Chemical Corp. v. United States, supra,* 179 Ct.Cl. at 390, found it significant that the contractor's facilities contract proposal made no reference whatsoever to the later-claimed cost. Had it intended the cost to be included, reasoned the Court, it would have included such cost in its proposal. *Id.*

■ Finally, the plaintiff's contention that dependent children's school tuition is a reasonable allowable and allocable cost under Item No. 0004, pursuant to the cost principles set out in Section 15 of the DAR, is off the mark. The cost principles in effect at the time of award apply to the contract. DAR § 15–204(b) (Sept. 1, 1978) states that costs shall be allowed to the extent that they are reasonable, allocable, and allowable.

DAR § 15–201.3(a) (July 1, 1976) sets forth the factors to be considered in determining the reasonableness of a given cost and states that consideration shall be given to:

 (i) whether the cost is of a type generally recognized as ordinary and necessary for the conduct of the contractor's business or the performance of the contract;

 (ii) *the restraints or requirements imposed by* such factors as generally accepted sound business practices, arm's length bargaining, Federal and State laws and regulations, and *contract terms and specifications;*

 (iii) the action that a prudent business man would take in the circumstances, considering his responsibilities to the owners of the business, his employees, his customers, the Government and the public at large; and

 (iv) significant deviations from the established practices of the contractor which may unjustifiably increase the contract costs.

(Emphasis added.)

Another pertinent section of the DAR cost guidelines further undermines the plaintiff's reliance upon these regulations. DAR § 15–201.2 (July 1, 1976) states, in pertinent part, that the following factors are to be considered in determining the allowability of individual cost items:

 (i) reasonableness, (ii) allocability, (iii) standards promulgated by the Cost Accounting Standards Board, if applicable, otherwise, generally accepted accounting principles and practices appropriate to the particular circumstances, and (iv) *any limitations or exclusions* set forth in this Part 2, or *otherwise included in the contract as to types or amounts of cost items.*

(Emphasis added.) Thus, the DAR cost clauses are clear that a contract, by its very terms, may specifically exclude costs otherwise reasonable, allocable, and allowable. DAR § 15–201.3(ii) (July 1, 1976). Therefore, dependent's school tuition is not allowable in this case, since Special Provision H1(a) of the contract specifies in unambiguous terms that dependent schooling is available only on a tuition-paying basis and since the listing of specific allowable cost items incurred on behalf of dependents in Special Provision H24(f) (travel and per diem) indicates an intent not to allow any other costs of dependents. It is manifest, therefore, that tuition costs are not allowable under the DAR cost principles relied upon by the plaintiff.

Accordingly, in view of the foregoing discussion, the contracting officer correctly

interpreted the contract in denying the plaintiff's claim.

### CONCLUSION

For the reasons discussed herein, the defendant's motion for summary judgment is granted, the plaintiff's cross-motion for summary judgment is denied, and the plaintiff's complaint is to be dismissed.