William E. BRADWELL, Dale Adami, et al., Plaintiffs–Appellants,

v.

GAF CORPORATION, Defendant–Appellee.

Nos. 430, 431, Docket 91–7659, 91–7662.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1991.

Decided Jan. 21, 1992.

Dominick Tocci, Albany, N.Y. (Tocci, Parker & Tocci, of counsel), for plaintiffs-appellants.

Francis X. Dee, Newark, N.J. (Patrick J. Brady, Carpenter, Bennett & Morrissey, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, LUMBARD and ALTIMARI, Circuit Judges.

OAKES, Chief Judge:

Plaintiffs appeal from a judgment of the United States District Court for the Northern District of New York, Howard G. Munson, *Judge,* granting GAF Corporation's motion for summary judgment. The district court rejected plaintiffs' claim for severance pay under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (1988), finding that GAF's severance pay policy did not provide for payment to employees who, upon the sale of a facility to another company, continued in their jobs as employees of the new owner. For the reasons set forth below, we affirm.

## BACKGROUND

Plaintiffs-appellants in this consolidated appeal were former employees of defendant GAF Corporation who worked at its chemical facility in Rensselaer, New York. They include members of Local 227 of the International Chemical Workers Union (Local 227), whose employment terms and conditions were set forth in collective bargaining agreements between GAF and Local 227, as well as members of the GAF Guards Association, Local 101, International Guards Union of America (Local 101), whose terms of employment were set forth in collective bargaining agreements between GAF and Local 101. Both Local 227's and Local 101's collective bargaining agreements with GAF incorporated by reference the GAF Severance Pay Policy of 1946 (Severance Pay Policy).

The Severance Pay Policy provided: "For employees permanently laid off because of lack of work who have been in our employ six months, or longer, payments shall begin after the fourth week of layoff." It explained further in an introductory paragraph:

[The Severance Pay Policy] is intended to cover layoffs due to lack of work and not cases of quits or discharges. Employees laid off because of conditions beyond the control of the Company, such as fire, flood, earthquake, strikes, or inability to obtain necessary materials, are not eligible for severance pay as they will be returned to work as soon as the condition is relieved. Severance pay should be paid even though the employee takes a job with another Company.

*Id.*

GAF sold its Rensselaer facility to BASF Wyandotte Corporation (BASF) on March 31, 1978. All of the plaintiffs continued in their jobs as employees of BASF. Upon the sale of the plant, none of the plaintiffs received severance pay from GAF.

The Local 227 and Local 101 plaintiffs filed separate suits in New York State Supreme Court in 1980, alleging that GAF violated New York Labor Law section 198–c (McKinney 1986) by failing to make severance payments after selling the Rensselaer facility. GAF filed petitions to remove the actions to federal court on the grounds that severance pay was governed by the collective bargaining agreements and the actions therefore arose under Section 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 (1988). The district court for the Northern District of New York granted GAF's removal petitions and denied the employees' motions to remand to state court. The employees in turn filed amended complaints alleging violations of ERISA. On June 5, 1991, Judge Munson granted GAF's motions for summary judgment. The employees in each action appealed, and their appeals were consolidated on July 31, 1991.

## DISCUSSION

The employees argue that they were terminated from their employment with GAF and were therefore entitled to severance pay under the company's Severance Pay Policy. GAF counters that (1) the employees' allegations do not give rise to an ERISA-based cause of action for breach of fiduciary duty; (2) the employees were required to pursue union arbitration before bringing their claims to court; (3) the employees' action was time-barred; and (4) GAF's severance pay policy does not ex-

tend payment to employees who, upon the sale of a facility to another company, continued in their jobs as employees of the new owner. We accept the fourth of these contentions. Because we find that GAF owed no severance pay to its former employees and therefore breached no duty to them, we affirm the district court's grant of summary judgment for GAF.[1]

■ When analyzing a claim to recover benefits due under the terms of a severance pay policy, we review *de novo* the plan administrator's interpretation of the policy. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (holding that a denial of benefits challenged under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (1988), is to be reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits"). In construing the policy, we look to the language of the policy and other indicia of the intent of the policy's creator. *Id.* at 112–13, 109 S.Ct. at 955. In the present action, both the appellee and the appellants urge that the plain language of the policy supports their own interpretation.

GAF points to the Severance Pay Policy's eligibility requirement—"For employees permanently laid off because of lack of work who have been in our employ six months, or longer, payments shall begin after the fourth week of layoff"—and argues that its employees were not laid off because of lack of work. Appellants counter by emphasizing the language "Severance pay should be paid even though the employee takes a job with another Company." They argue that this provision must include those who took a job with BASF upon the transfer of ownership of the facility. GAF's interpretation of the Policy, appellants contend, arbitrarily distinguishes between employees who stay on with a new owner and those who find employment elsewhere.

■ We are unpersuaded by appellants' argument. By its plain language and evident intent, the Severance Pay Policy does not entitle appellants to recover. Only employees "permanently laid off because of lack of work" are entitled to severance pay. The Policy's explicit purpose is "to cover lay-offs due to lack of work." Where an employee is kept in his or her job because, despite a change in ownership, there is no lack of work, that employee cannot accurately be described as "permanently laid off because of lack of work."

The allowance of severance pay even if an employee takes another job does not alter the basic eligibility requirement. Employees kept on by a plant owner's successor are in a different position from those who are laid off but find alternate employment. The former are not faced with the same risk of unemployment as are those who are permanently laid off because of lack of work. The Policy provision ensures that those laid off will not be discouraged from seeking alternative employment; it does not place appellants in the same position as laid off employees who may or may not find other jobs.

GAF's position is further supported by the Policy's provision that

**1.** Because we conclude that GAF did not owe the employees any severance pay under the company's Severance Pay Policy, we need not address the issues raised by GAF's other contentions. We do not determine, therefore, whether denial of severance pay gives rise to a cause of action for breach of fiduciary duty under ERISA §§ 502(a)(2) & (3), 29 U.S.C. §§ 1132(a)(2) & (3) (1988). While it is well settled that severance pay policies are "employee welfare benefit plans" within the meaning of ERISA, *Gilbert v. Burlington Indus., Inc.,* 765 F.2d 320, 324–26 (2d Cir.1985), *aff'd sub nom. Roberts v. Burlington Indus., Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), and thus a denial of severance pay can form the basis of an action to recover benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (1988), *e.g., Petrilli v. Drechsel,* 910 F.2d 1441, 1442 (7th Cir.1990), it is less clear whether the denial of severance pay can give rise to an action for *breach of fiduciary duty* under ERISA §§ 502(a)(2) & (3), 29 U.S.C. §§ 1132(a)(2) & (3) (1988), as plaintiffs claim. *See Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985) (recovery under ERISA for breach of fiduciary duty inures to benefit of plan as a whole, not individual claimant). Likewise, we do not decide whether GAF is correct that the action is barred because of failure to exhaust the arbitration remedy and because of untimeliness.

upon re-employment by the Company, all payments of unpaid installments shall immediately cease with the payment for the last work day before rehiring. If an employee refuses to return to work on the job held prior to layoff—his severance pay will be cancelled as of the date on which he was scheduled to return to work.

Implicit in this provision is the assumption that an employee permanently laid off and thus receiving severance pay does not still hold "the job held prior to layoff."

We have observed that, in the context of the sale of a business where the buyer retains the former owner's employees, it would give a windfall to award severance pay to employees who never changed their jobs and were never out of work. *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991). *Accord Sejman v. Warner–Lambert Co.*, 889 F.2d 1346, 1350 (4th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990); *Lakey v. Remington Arms Co.*, 874 F.2d 541, 545 (8th Cir.1989).

 Severance pay policies serve two objectives: first, to protect employees from the economic hardship of joblessness, and second, to reward employees for past service to the company. *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 325 (2d Cir.1985), *aff'd sub nom. Roberts v. Burlington Indus., Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *Bennett v. Gill & Duffus Chems., Inc.*, 699 F.Supp. 454, 459 (S.D.N.Y.1988). The first objective does not apply to appellants, but appellants argue that the second objective applies, and supports an interpretation of the Severance Pay Policy that would require payment to the employees retained by BASF. Because BASF absorbed the Severance Pay Policy, and under it severance allowances upon layoff were to be based on continuous service including service to GAF, we do not perceive that employees' service to the company was in any way disregarded by GAF's denial of severance pay here.

Under ERISA, moreover, severance benefits are not vested. *Reichelt,* 921

F.2d at 430. "Congress expressly exempted employee welfare benefit plans from stringent vesting, participation, and funding requirements. Congress recognized the differences between welfare benefit plans and pension plans." *In re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir.1986). Because severance benefits are contingent and unaccrued, employees do not retain any continuing right to severance payments after their operation is sold by their former employer. *Sejman v. Warner–Lambert Co.*, 889 F.2d at 1348–49.

In sum, the language of GAF's Severance Pay Policy leads us to conclude that employees who retained their jobs under the plant's new owner are not entitled to severance pay from GAF. The adoption of that severance pay policy by BASF, coupled with the recognition under that policy of GAF service, and Congress's rejection of vesting requirements for severance pay policies fortify that conclusion. Accordingly, the judgment of the district court is affirmed.