15 F.3d 1027
 62 USLW 2596, 17 Employee Benefits Cas. 2612
 William C. BEDINGHAUS, Robert D. Bacon and Barbara J. Orr,
Individually and on behalf of all others similarly
situated, Plaintiffs-Appellants,
v.
MODERN GRAPHIC ARTS, and Times Publishing Company, d/b/a St.
Petersburg Times, Defendants-Appellees.
 No. 92-2210.
 United States Court of Appeals,
Eleventh Circuit.
 March 9, 1994.
As Amended April 19, 1994.
 
 Leonard R. Poe, Burnsville, NC, for plaintiffs-appellants.
 George K. Rahdert, Rahdert & Anderson, St. Petersburg, FL, for Times Pub.
 Donald B. Harden, Mairen C. Kelly, Fisher & Phillips, Atlanta, GA, for all defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before DUBINA, Circuit Judge, CLARK and ESCHBACH*, Senior Circuit Judges.
 CLARK, Senior Circuit Judge:
 
 
 1
 This is a class action brought by a group of employees to recover benefits due them under the terms of a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001, et seq. Plaintiffs contend that they were entitled to severance pay benefits when the company for which they worked was sold. The district court granted defendants' motion for summary judgment, holding that plaintiffs were not entitled to severance pay benefits under the terms of their former employer's severance pay policy because plaintiffs were employed by the new owner of the company. We find that the district court misconstrued the terms of the severance pay policy. Accordingly, we reverse.
 
 FACTS
 
 2
 Each member of the plaintiff class is a former employee of Modern Graphic Arts, Inc. ("MGA"), a printing business located in Tampa, Florida. MGA was a wholly-owned subsidiary of Times Publishing Company (the "Times"). MGA's employee benefits plans were set out in MGA's Staffer Handbook and Times Publishing Company's Times-O-Guide. The Staffer Handbook begins with the statement:
 
 
 3
 This handbook has been prepared so that you may be better informed about the policies, procedures, benefits and other issues concerning your employment here. It is intended only to be a supplement to the Times-O-Guide you received at check-in at the Times Personnel Office. If a different interpretation or conflict exists between the Times-O-Guide and this handbook, the Times-O-Guide will prevail unless specifically identified to the contrary.[1]
 
 
 4
 MGA's and the Times' severance pay policy is set out in the Times-O-Guide in a section entitled "Termination." This section provides:
 
 
 5
 Our hope is that every staffer who joins the company will stay until retirement. However, we realize this is unrealistic and there will be turnover. Such separations, whether through resignation or discharge are simpler when certain ground rules are stated and understood.
 
 
 6
 1. When you resign, you should give notice. Two weeks is customary.
 
 
 7
 2. If, after the first six months, you are discharged as a full-time staffer for reasons other than cause (see examples below), the company will pay you 1 week's pay-in-lieu of notice for each 6 months of service. This amounts to 2 weeks' pay for 1 year of service, 10 weeks' pay for 5 years of service, etc. No pay-in-lieu of notice is paid for less than six months' service, nor for fractional parts of six-month periods.[2]
 
 
 8
 The section goes on to give examples of discharge "for cause." These include a violation of confidence, dishonesty, intoxication on the job, conviction of a crime, unreported absence, destruction of company property, willful neglect of duty, insubordination, and offensive conduct.
 
 
 9
 In 1989, the Times sold substantially all of the assets of MGA to a new owner.[3] The new owner retained the former employees of MGA in their same jobs at the same salary levels. The new owner did not, however, give the former MGA employees credit for their years of service at MGA for purposes of accruing and calculating severance pay benefits. Thus, plaintiffs, especially those who had been with MGA for many years, lost substantial severance pay benefits. Plaintiffs did not have the option of remaining in the employ of either MGA or the Times.
 
 
 10
 After both MGA and the Times denied plaintiffs' request for severance pay benefits, plaintiffs filed this action pursuant to 29 U.S.C. Sec. 1132(a)(1)(B) to recover the benefits allegedly due them. Plaintiffs' amended complaint states two counts: Count I seeks recovery of the severance pay benefits from MGA, and count II seeks recovery of the same benefits from the Times. Plaintiffs eventually filed a motion for partial summary judgment as to liability, requesting that the district court "grant summary judgment as to liability against Modern Graphic Arts, Inc. and Times Publishing Company, jointly and severally."[4] Defendants opposed this motion and filed their own motion for summary judgment on all claims, arguing that plaintiffs were not "discharged" within the meaning of MGA's and the Times' severance pay policy because they were employed by the new owner. The Times also filed an alternative motion for summary judgment on count II, arguing that even if plaintiffs were "discharged" within the meaning of the severance pay policy, they were employees of MGA, not of the Times, and, therefore, were not entitled to recover benefits from the Times.
 
 
 11
 The district court held that plaintiffs were not entitled to benefits under the terms of the severance pay policy because they were never unemployed. Accordingly, the district court denied plaintiffs' motion for partial summary judgment as to liability and granted defendants' motion for summary judgment on all claims. The district court did not reach the issues raised in the Times' alternative motion for summary judgment on count II. Plaintiffs appealed.
 
 DISCUSSION
 
 12
 Prior to the Supreme Court's decision in Firestone Tire and Rubber Co. v. Bruch,[5] federal courts reviewed an employer's interpretation of a benefit plan governed by ERISA under an arbitrary and capricious standard.[6] In Bruch, however, the Supreme Court rejected the general application of the arbitrary and capricious standard. Noting that "ERISA abounds in the language and terminology of trust law,"[7] the Court held:
 
 
 13
 Consistent with established principles of trust law, we hold that a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.[8]
 
 
 14
 In this case, defendants do not contend that their benefit plan gives an administrator or fiduciary the discretionary authority described in Bruch. Accordingly, we review de novo defendants' interpretation of their severance pay policy. In interpreting the terms of this severance pay policy, we look to the intent of the parties; however, "where a disputed term is unambiguous, we presume its natural meaning to be conclusive evidence of such intent."[9]
 
 
 15
 The severance pay policy at issue here provides that an employee who is "discharged as a full-time staffer for reasons other than cause"[10] will receive severance pay. The interpretation of this provision turns on the construction of the term "staffer." This term is used repeatedly throughout both the Times-O-Guide and MGA's Staffer Handbook. Although "staffer" is not defined in either of these publications, its meaning is clear. As used in the Times-O-Guide, "staffers" means employees of the Times and its affiliates, including wholly-owned subsidiaries such as MGA.[11] As used in MGA's Staffer Handbook, the term means employees of MGA.[12] Thus, "discharged as a full-time staffer" means discharged as a full-time employee of the Times or one of its affiliates, in this case, MGA.
 
 
 16
 Other language in the "Termination" section of the Times-O-Guide is consistent with this interpretation. This section begins with the statement: "Our hope is that every staffer who joins the company will stay until retirement."[13] Shortly after this statement is the severance pay provision, which is a means to protect employees who, through no fault of their own, cannot remain with "the company" until retirement. Clearly, "the company" refers to the Times and its affiliates, not to some entity that happens to purchase the assets of one of the affiliates. We see no ambiguity in the crucial terms. Applying the plain and natural meaning of the provisions discussed above, plaintiffs were entitled to severance pay when their employment with MGA was terminated, regardless of whether they were employed by the entity that purchased MGA's assets.
 
 
 17
 Our conclusion does not result in a windfall to plaintiffs. When plaintiffs' employment with MGA ceased, plaintiffs lost substantial severance pay benefits because, at least for purposes of severance pay, they lost credit for their years of service with MGA. We find instructive language from the Second Circuit's opinion in Bradwell v. GAF Corp.[14] In that case, former employees of GAF sought severance pay after GAF sold to BASF the facility at which the employees worked. The Second Circuit concluded that the employees were not entitled to severance pay because they did not lose any severance pay benefits when their employer changed. Noting that one of the objectives of severance pay policies is to reward employees for past service to the company, the Second Circuit reasoned:
 
 
 18
 Because BASF absorbed the Severance Pay Policy, and under it severance allowances upon layoff were to be based on continuous service including service to GAF, we do not perceive that employees' service to the company was in any way disregarded by GAF's denial of severance pay here.[15]
 
 
 19
 Here, we are faced with a situation in which plaintiffs' entitlement to severance pay was denied by MGA/Times and the new owner will not credit plaintiffs' past service to MGA/Times for severance pay purposes. We merely note that plaintiffs' loss of severance pay benefits is a factor we considered in reaching our conclusion that plaintiffs are entitled to benefits under either the Times' or MGA's severance pay policy.
 
 
 20
 Our conclusion is consistent with recent case law from other circuits. For example, in Bellino v. Schlumberger Technologies, Inc., plaintiffs ceased to be employees of Schlumberger and became employees of National Semiconductor Corporation when National Semiconductor took over maintenance work that had been performed by Schlumberger. Under Schlumberger's benefits plan, Schlumberger provided salary continuation when it "terminate[d] an employee for lack of work, poor business conditions, or change in business focus."[16] The First Circuit held that plaintiffs were entitled to severance pay benefits, notwithstanding that they were never unemployed. The Court explained:
 
 
 21
 We agree with the finding of the district court that the above Plan language is clear and unambiguous as applied to the facts of this case and that it entitles appellees to severance benefits. As an initial matter, there can be no dispute that appellees were "terminated" within the plain meaning of the Plan. As it appears in the Plan, "termination" is defined broadly and encompasses those situations in which Schlumberger ceases to employ an individual. It is uncontested that Schlumberger ended its employment relationships with [plaintiffs]....
 
 
 22
 Additionally, there is no genuine dispute that [plaintiffs'] terminations were involuntary. Schlumberger did not give [plaintiffs] the option to remain as employees; they were to choose either resignation or employment with NSC.[17]
 
 
 23
 Similarly, here, the term "discharged" as used in the Times-O-Guide encompasses those situations when an employee ceases to be a "staffer," that is, an employee of the Times or one of its affiliates. Plaintiffs in this case were not given the option to remain with the Times or MGA; they had to choose either resignation or employment with the new owner. Like the plaintiffs in Bellino, plaintiffs in this case are entitled to severance benefits.
 
 
 24
 This case is also similar to Ulmer v. Harsco Corp.,[18] in which former employees of Harsco Corporation sought severance pay following the sale of the division for which they worked. The district court had held that the employees were not entitled to severance pay because they were employed by the new owner. The Third Circuit reversed, stating:
 
 
 25
 "[C]ontinuing employment" is properly construed to mean employment with Harsco's Casting Division, not with an acquiror of the Casting Division's assets/operations. The Plan states that "[t]o further our concept of career employment, the Company will take all reasonable steps to provide continuing employment ...". If the district court's interpretation were correct, then it would follow that Harsco's Casting Division's concept of "career employment" as outlined in the Plan would be satisfied by employees working for a different employer/owner, albeit at the same plant. We do not think that such a construction comports with the plain meaning of the Plan.[19]
 
 
 26
 Similarly, here, the Times' career employment concept is reflected in the Times-O-Guide: "Our hope is that every staffer who joins the company will stay until retirement."[20] To encourage employees to remain with the company, it committed itself as follows: "If, after the first six months, you are discharged as a full-time staffer for reasons other than cause ..., the company will pay you 1 week's pay-in-lieu of notice for each 6 months of service."[21]
 
 
 27
 This Circuit has not yet applied the de novo standard articulated in Bruch in construing a severance pay policy following sale of the company.[22] There are, however, two pre-Bruch cases that are instructive. First, in Harris v. Pullman Standard, Inc.[23] Pullman, the employer, sold one of its operations to Trinity Industries, Inc. The plaintiffs were employed by Trinity, performing the same jobs that they had done for Pullman, but at a slightly reduced salary and with a benefit package that was not as favorable as that of Pullman. The district court held that Pullman's decision to deny the plaintiffs severance pay was arbitrary and capricious. This court affirmed, stating:
 
 
 28
 The policy terms indicate that an employee will be eligible for a termination allowance if the employee's job is eliminated, and a new assignment cannot be found for him within the company. In the context of the policy, the term "company" refers only to Pullman, not successive corporations. Pullman eliminated plaintiffs' jobs by the sale of the manufacturing plant to Trinity. Subsequently, Pullman failed to offer plaintiffs new opportunities within its company, so the plaintiffs became eligible for severance pay. The policy does not provide any exceptions to this eligibility if the corporate ownership changes and Pullman's employees obtain jobs with the new corporation. We are guided by the language of the policy, and any interpretation that contradicts the clear wording of the policy has to be arbitrary and capricious.[24]
 
 
 29
 The severance pay policy at issue here is similar to Pullman's plan in that the term "company" refers only to the Times and its affiliates, not successive corporations, and in that there are no exceptions to severance pay eligibility based on retention of employment with a successive corporation. While the policy at issue here differs from the Pullman plan in other ways, these similarities support our decision in this case.
 
 
 30
 Second, in Anderson v. Ciba-Geigy Corp., the purchasing corporation retained the plaintiffs at their same salaries and job positions, but the plaintiffs lost seniority rights and vacation benefits. The former employer set forth two arguments in support of its decision to deny the plaintiffs' request for severance pay. First, the former employer argued that plaintiffs were never "terminated" because they remained employed. Second, the former employer argued that the corporate sale was a "special situation" under a unique provision of its benefits plan. While this court found for the former employer based on the second argument, it stated that the first argument "is probably legally wrong."[25] The court explained: "While it is true that plaintiffs never suffered a termination of actual employment--they were, after all, never unemployed--Ciba-Geigy's Employee Benefit Plan does not define 'termination' in that manner."[26] Likewise, the severance pay policy at issue here does not define "discharge" or "termination" to require unemployment.
 
 
 31
 Defendants rely on this court's decision in Blank v. Bethlehem Steel Corp. Blank is distinguishable from this case in several respects. First, Blank involved the interpretation of a retirement benefit very different from the severance pay benefit at issue in this case. Second, unlike this case, the employees in Blank were given credit for their work both with the former employer and with the purchaser for purposes of the benefit at issue. Finally, the court in Blank reviewed the employer's decision to deny benefits under an arbitrary and capricious, rather than de novo, standard. As the Sixth Circuit has said: "Courts should proceed carefully before applying rules developed specifically to ferret out arbitrary and capricious action when interpreting the terms of a plan de novo."[27] We do not find Blank helpful in deciding this case.
 
 
 32
 Defendants also rely on cases from other circuits in which the courts have ruled against employees seeking severance pay following the sale of the company for which they work. Many of these cases predate Bruch; thus, the courts applied an arbitrary and capricious, rather than a de novo, standard of review to the employer's decision to deny benefits.[28] Moreover, each of these cases, as well as the cases upon which defendants rely that apply a de novo standard of review, are distinguishable from this case. As the First Circuit said in Bellino:
 
 
 33
 Federal courts have established no hard and fast rule that an individual must suffer a period of unemployment to qualify for severance benefits under ERISA. Those courts that have deemed unemployment a prerequisite to such benefits have predicated their decisions on the particular terms of the ERISA plan at issue and its application to the specific facts before them.[29]
 
 
 34
 Each of the cases upon which defendants rely involve ERISA plans with terms distinct from the terms of the policy at issue in this case.[30] Under the particular terms of the Times' and MGA's severance benefits policy, as applied to the specific facts before us, we find that plaintiffs are entitled to severance pay.
 
 CONCLUSION
 
 35
 For reasons discussed above, the decision of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Modern Graphic Arts, Inc. Staffer Handbook at 1
 
 
 [2]
 Times-O-Guide at 30. MGA's Staffer Handbook also sets out the severance pay policy, but in a less detailed manner. It provides: "If terminated without cause, a staffer is entitled to one week's pay for each complete six month period of employment upon termination. Termination with cause is defined in the Times-O-Guide." Modern Graphic Arts, Inc. Staffer Handbook at 12
 
 
 [3]
 The new owner was MGA Holdings, Inc., who is not a party to these proceedings
 
 
 [4]
 R2-55-3
 
 
 [5]
 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)
 
 
 [6]
 See, e.g., Anderson v. Ciba-Geigy Corp., 759 F.2d 1518, 1521 (11th Cir.), cert. denied, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985)
 
 
 [7]
 Bruch, 489 U.S. at 110, 109 S.Ct. at 954
 
 
 [8]
 Id. at 115, 109 S.Ct. at 956-57
 
 
 [9]
 Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 30 and n. 5 (1st Cir.1991) (citing, among other things, Bruch, 489 U.S. at 112, 109 S.Ct. at 955, and Restatement (Second) of Trusts Sec. 164 Comment e (1959))
 
 
 [10]
 Times-O-Guide at 30 (emphasis added)
 
 
 [11]
 See, e.g., Times-O-Guide at 24 ("Under certain conditions, we grant employment credit to staffers who have been previously employed by the Times Publishing Company and its affiliates....")
 
 
 [12]
 See, e.g., Modern Graphic Arts, Inc. Staffer Handbook at 1 ("For our new staffers, this booklet will introduce our organization to you and give you information about our various benefits and policies which apply to you as a staffer of Modern Graphic Arts, Inc.")
 
 
 [13]
 Times-O-Guide at 30
 
 
 [14]
 954 F.2d 798 (2d Cir.1992)
 
 
 [15]
 Id. at 801
 
 
 [16]
 944 F.2d at 30
 
 
 [17]
 Id
 
 
 [18]
 884 F.2d 98 (3d Cir.1989)
 
 
 [19]
 Id. at 102
 
 
 [20]
 Times-O-Guide at 30
 
 
 [21]
 Id
 
 
 [22]
 Although Blank v. Bethlehem Steel Corp., 926 F.2d 1090 (11th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991), was decided after Bruch, the court in Blank applied an arbitrary and capricious standard based on the terms of the plan at issue
 
 
 [23]
 809 F.2d 1495 (11th Cir.1987)
 
 
 [24]
 Id. at 1498
 
 
 [25]
 759 F.2d at 1521
 
 
 [26]
 Id
 
 
 [27]
 Adams v. Avondale Industries, Inc., 905 F.2d 943, 950 (6th Cir.), cert. denied, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990)
 
 
 [28]
 For example, the courts in Holland v. Burlington Industries, Inc., 772 F.2d 1140 (4th Cir.1985), aff'd, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986), Jung v. FMC Corp., 755 F.2d 708 (9th Cir.1985), and Sly v. P.R. Mallory & Co., Inc., 712 F.2d 1209 (7th Cir.1983), applied an arbitrary and capricious standard of review. Although Lakey v. Remington Arms Co., Inc., 874 F.2d 541 (8th Cir.1989), was decided after Bruch, the court applied an arbitrary and capricious standard based on the language of the plan at issue
 
 
 [29]
 Bellino, 944 F.2d at 31
 
 
 [30]
 See Allen v. Adage, Inc., 967 F.2d 695 (1st Cir.1992) (plaintiffs not entitled to severance pay because parties intended that phrase "reduction in force" have an economic dimension requiring unemployment); Awbrey v. Pennzoil Co., 961 F.2d 928 (10th Cir.1992) (plaintiffs not entitled to severance pay because they were "offered a comparable job" within the meaning of the plan); Harper v. R.H. Macy & Co., Inc., 920 F.2d 544 (8th Cir.1990) (plaintiffs not entitled to severance pay because they were not "permanently terminated" within the meaning of the plan)