Donna BOSS, Plaintiff,

v.

ADVANSTAR COMMUNICATIONS, INC., Defendant.

No. 94 Civ. 4460 (LAK).

United States District Court, S.D. New York.

Dec. 26, 1995.

Bertram Perkel, Baker & Botts, L.L.P., New York City, for Plaintiff.

Frederick R. Dettmer, Karen M. Streisfeld, Law Offices of Frederick R. Dettmer, New York City, Karen L. Giffen, Cavitch, Familo, Durkin & Frutkin, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The plaintiff, Donna Boss, is the editor of *Food Management* magazine, which was sold by defendant to Penton Publishing, Inc. ("Penton"). Penton agreed to continue Boss

as editor, at a salary increase of about ten percent. Boss nonetheless sues her former employer, Advanstar Communications, Inc. ("Advanstar"), under the Employee Retirement Income Security Act of 1984 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, for severance pay. She claims that she was entitled to that pay under the Advanstar benefit plan unless her employment by Penton was comparable to that by Advanstar; she alleges that her Penton employment was not comparable because it did not include a severance pay policy. The parties cross-moved for summary judgment and then stipulated that the Court would try the matter on the summary judgment record, making such findings and conclusions as it might make in the event it had tried the case in open court.

### Facts

As noted, Boss was editor of *Food Management* when the magazine was owned by Advanstar. During the period relevant to this action, Advanstar's severance pay policy provided in relevant part:

"Employees released by the Company will receive, on the next regular pay cycle following termination, one weeks' severance pay for each full year of service up to five years service, and two weeks' severance pay for each full year beyond five years service. *Severance pay is not paid* when an employee elects retirement, whether early, normal or deferred, *when a department, division or subsidiary is sold and the employee is offered continued employment by the buyer,* or when an employee is discharged." (Emphasis added)

Penton evidently entered into discussions and reached agreement with Advanstar in 1992 concerning the purchase of the Food Management group of magazines. On September 30, 1992, it offered plaintiff continued employment as editor of *Food Management,* conditioned upon her resigning as an employee of Advanstar. The sale closed on October 1, 1992. Plaintiff accepted Penton's offer, and resigned from Advanstar,[1] on October 2, 1992. If Advanstar's severance policy had covered plaintiff, she would have been entitled to $43,160 in light of her eighteen years of service with Advanstar.

The terms of plaintiff's employment with Advanstar and Penton, respectively, may be summarized as follows:

|  | Advanstar | Penton |
|---|---|---|
| Salary | $72,400 | $79,640 |
| Vacation | 4 weeks | 4 weeks |
| 401(k) plan vesting | vested | 5 year vesting (3 yrs remaining) |
| Medical | $175 deductible, 80% of bills | $350 deductible, 75% of bills |
| Dental | covered | covered |
| Disability insurance | 60% of wages | 66⅔% of wages |
| Life insurance | $145,000 | $84,000 |
| Severance pay entitlement | $43,160, increasing with subsequent service | none |
| Pension plan | not indicated | covered |

As is readily seen, Boss was better off, from a strictly economic point of view, with Penton as regards salary, disability insurance and pension coverage; better off with Advanstar with respect to 401(k) vesting, medical insurance, life insurance and severance; and equally well off as regards vacation and dental insurance.

1. The resignation expressly reserved the right to make the claim here in suit.

By letter dated October 1, 1992, plaintiff made a formal claim for severance pay from Advanstar which was denied on November 6, 1992. She appealed that decision on December 17, 1992. Advanstar rejected the appeal on March 29, 1993.

## Discussion

■ The parties agree that the Advanstar severance plan is an employee welfare benefit plan within the meaning of ERISA. (Cpt ¶ 15; Ans ¶ 15) They appear to agree also that the scope of review of the denial of Boss' claim is *de novo* (Pl.Br. 7; *see* Def.Br. 3), which in any case is the correct standard in view of the fact that the Advanstar plan, to the extent it is before the Court, did not vest discretion in anyone to determine benefit claims. *E.g., Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112–13, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989); *Sharkey v. Ultramar Energy Limited,* 70 F.3d 226, 230 (2d Cir.1995). In consequence, the Court's role is to construe the Advanstar severance plan to give effect to the intent of the plan's creator. *Bradwell v. GAF Corp.,* 954 F.2d 798, 800 (2d Cir.1992).

The starting point of course is the language of the severance plan. The plan created a right to severance benefits that was unconditional unless, so far as is relevant here. Boss' employment was terminated because her department or division was sold *and* the buyer offered her "continued employment." Both of these conditions were met here, but Boss goes on to argue that "the Plan must be read as to require a buyer to offer employment on terms and conditions which are comparable to those she previously enjoyed ..." (Pl.Br.4) Advanstar, on the other hand, rejoins that the plan divests the employee of any right to severance as long as the buyer offers any employment and that a requirement of comparability is nowhere to be found in its language. With due respect,

the Court regards the positions taken by both sides as unduly extreme.

Advanstar's position overlooks both the language of the plan and common sense. The plan divested the employee of the right to severance pay on a change of control only if the buyer offered "continued employment." The word "continued" in this context connotes that a previously existing condition must persist in the future for the divesting condition to be satisfied. There are two possibilities as to the preexisting condition that must persist—(1) the mere fact of gainful employment, as Advanstar implicitly argues, and (2) the nature, terms and conditions of the employment, as Boss maintains. The construction advanced by Advanstar, however, makes it difficult to understand what independent purpose is served by the use of the word "continued" in the pivotal phrase. After all, if the controlling clause read "and the employee is offered employment by the buyer"—thus omitting the word "continued"—it would mean precisely what Advanstar says it means with the word included. As contractual language is to be read so as to give meaning to every part wherever reasonably possible,[2] Advanstar's proposed construction may not be adopted if there is another view that would give meaning to the word "continued."

Boss' suggestion that the right to severance pay is divested only if the buyer offers comparable employment is such a view, putting to one side for a moment the meaning of "comparable." Indeed, it is the only view of the language that accords with common sense, as Advanstar's argument would permit the employer to avoid paying severance if, for example, a $75,000 a year editor were offered occasional employment by the new owner as a janitor at the minimum wage—certainly a result that cannot have been intended by Advanstar, not to mention one within the contemplation of its employees. *Cf. SIFCO Industries, Inc. v. Advanced Plat-*

---

**2.** *See Kinek v. Paramount Communications, Inc.,* 22 F.3d 503, 509 (2d Cir.1994) (as amended on denial of rehearing) (in ERISA action, following "the well established principles of contract construction, which require that all provisions of a contract be read together as a harmonious whole, if possible"); *Systems Exploration, Inc. v.* *United States,* 8 Cl.Ct. 334, 337 (1985) (a "basic rule of contract interpretation is that a contract must be read as a harmonious whole with no words rejected or treated as meaningless."); *see also Sharkey,* 70 F.3d 226, 230 (court must apply traditional principles of contract interpretation in conducting *de novo* review of plan).

*ing Technologies, Inc.,* 867 F.Supp. 155, 158 (S.D.N.Y.1994) (non-compete clause unenforceable because offer of employment as part time consultant not comparable to previous position).

▪ This discussion, however, does not mean that Boss should prevail. Indeed, it illuminates the extremity of her position as well. Surely, for example, Advanstar could not have intended—and Boss could not reasonably have thought—that Boss would have been entitled to severance benefits if Penton had employed her at quadruple her former salary, double her previous vacation benefits, and on other terms and conditions at least as favorable to her as those previously paid by Advanstar save only that Penton gave her no right to severance benefits in the event of her later termination. Hence, the Court must consider the circumstances that bear on Advanstar's intentions and that would inform the reasonable expectations of its employees in determining the meaning of this clause.[3]

Severance benefits usually are provided principally to help former employees to minimize the consequences of unemployment when they are forced to seek new work without fault of their own. *See, e.g., Headrick v. Rockwell Int'l Corp.,* 24 F.3d 1272, 1276 (10th Cir.1994). And while such benefits properly may be regarded also, as Boss argues, as rewards for past services,[4] the sense in which that is true is a limited one. After all, if an employer wished simply to reward employees for long and faithful service, it could do so without linking the reward to termination, especially to termination where the employee would not remain in the employ of a new owner of the business. In these circumstances, a construction of the plan in the manner for which Boss contends would risk giving a windfall to an employee who did not change her job and who was not out of work. *See Bradwell,* 954 F.2d at 800.

▪ Here the Court's task is to determine what was reasonably intended by the plan's language. Taking the foregoing considerations into account, the Court finds that Boss was entitled to severance in these circumstances unless the nature, terms and conditions of the employment she was offered by Penton, taken as a whole, were reasonably comparable to those of her employment by Advanstar immediately prior to the sale.

▪ The nature, terms and conditions of Boss' employment by Penton meet this standard. She retained exactly the same position with substantially the same duties. She received a pay increase of about ten percent, improved disability insurance, a pension plan, and equivalent vacation. While Penton did not have a plan that gave her contractual rights to severance payments in the event of her termination, the only point on which Boss relies, and its insurance benefits and 401(k) vesting provisions were less generous than Advanstar's, Boss' position with Penton nevertheless was reasonably comparable to her previous employment.[5] Accordingly, Advanstar was within its rights in rejecting her claim for severance benefits.

---

**3.** The Court is aware that *Bradwell* spoke of determining the meaning of a plan with reference to the intention of the creator, although it did not exclude consideration of the reasonable expectations of a plan's beneficiaries. 954 F.2d at 800. It appears to this Court that consideration must be given to the reasonable expectations of the plan beneficiaries, notwithstanding that most plans covered by ERISA are not the product of negotiations between the parties, lest their legitimate reliance interests be ignored. Perhaps this is best accomplished by resolving ambiguities against the plan creator. *See Masella v. Blue Cross & Blue Shield of Connecticut, Inc.,* 936 F.2d 98, 107 (2d Cir.1991) (applying *contra proferentem* to construction of plan insurance policy); *contra, Allen v. Adage, Inc.,* 967 F.2d 695, 701 n. 6 (1st Cir.1992) (*contra proferentem* inapplicable in ERISA cases). But the issue need not be addressed here because this Court would reach precisely the same result in this case based solely on its assessment of the intention of the plan creator. Nor need it consider the proper role of *contra proferentem* in plan interpretation because plaintiff has not sought its application in this case.

**4.** *See, e.g., Bradwell,* 954 F.2d at 801.

**5.** The Court notes that Boss' employment with Penton will terminate before the end of the year and that Penton, although not obliged to do so, has agreed to pay Boss $34,000 in return for her assistance in effecting an orderly transition of the magazine to a new home office in Cleveland. (Pl.Br. 3 n. 3) This of course has no bearing on the determination of this action.

*Conclusion*

The complaint is dismissed. The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52.

SO ORDERED.