**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3064
_____

PAUL FELKER; WILLIAM SCHRADER; MICHAEL MCCORMICK;
ANTHONY M. KOZLOWSKI; WILLIAM T. DUNBAR; EDWARD R.
MACIEJEWSKI; BRIAN J. KELSO; WILLIAM VANDERGRIFT; PAUL D.
JENNINGS; DARRYL T. BRANT; FRED J. SOBOTINIC; ROBERT A. FORTE, JR;
ANDREW R. GOSS; EDWIN J. ERIKSEN; ANTHONY C. REILLY;
FRANK T. GANNON; JOHN P. GANNON; BRIAN D. BARROWCLIFF;
LEO RUSHTON; DEONARINE JAWAHIR; CARL HOLDERER;
ROBERT A. GRANGE; PAUL C. MILLER,
                                                            Appellants

v.

USW LOCAL 10-901, USW LOCAL 10-901 (SU) AND USW LOCAL 10-901 (NE)
MARCUS HOOK REFINERY WORKERS INVOLUNTARY TERMINATION PLAN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-13-cv-07101)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 8, 2017
_____

Before: CHAGARES, VANASKIE, and FUENTES, <u>Circuit Judges</u>.

(Filed: June 21, 2017)

_____

OPINION[*]

_____

CHAGARES, Circuit Judge

Plaintiffs Mobile Work Force Employees ("MWF Employees"), who are former employees of Sunoco, Inc. ("Sunoco"), brought a benefits recovery suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et. seq., against the defendant Marcus Hook Refinery Workers Involuntary Termination Plan (the "Plan"). The Plan denied severance benefits to the MWF Employees after it determined that they were not terminated in connection with the idling of Sunoco's Marcus Hook Refinery. The District Court granted summary judgment in favor of the Plan. The MWF Employees appeal. We will affirm the determination of the District Court.

I.

The MWF Employees were maintenance employees assigned to perform duties at two of Sunoco's refineries: the Marcus Hook Refinery and the Philadelphia Refinery. In 2012, Sunoco decided to idle the main processing unit of the Marcus Hook Refinery. Sunoco and USW Local 10-901, which represented the MWF Employees, thereafter engaged in bargaining and entered into a Settlement Agreement in February 2012. Pursuant to that Agreement, the MWF Employees would be "afforded the opportunity to be assigned on a temporary basis to work at the Philadelphia Refinery and work until laid

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

off from such temporary assignment as determined by management." Appendix ("App.") 930. Additionally, a severance benefit plan (the "Plan") was established to "alleviate financial hardships which may be experienced" by Sunoco employees in connection with the idling of the [Marcus Hook] Refinery." App. 908.

Several of the Plan's terms are implicated in this suit. For instance, the Plan limited severance benefits to "those employees whose employment is terminated in connection with [Sunoco's] idling" of the main processing units of the Marcus Hook Refinery. App. 908. The Plan provided that "[s]uch affected employees who express an interest (preference) in terminating their employment with [Sunoco] and are accepted for termination" would be eligible for severance benefits. App. 908. The Plan also contained several eligibility exclusions. App. 909. Benefits under the Plan were to be paid out of Sunoco's assets, and the Plan Administrator was vested with "full responsibility for interpreting and administering the terms and provisions of the Plan." App. 916.

Following the idling of the main processing units at Marcus Hook Refinery, the MWF Employees were assigned to the Philadelphia Refinery. In July 2012, Sunoco entered into a Contribution Agreement to sell the Philadelphia Refinery to Philadelphia Energy Solutions, LLC ("PES"), in which Sunoco was a minority owner. App. 1111. Around the same time that the agreement between Sunoco and PES was being negotiated, PES and Local 10-1, which represented the Philadelphia Refinery workers, entered into a Memorandum of Understanding and Agreement ("MOU") dated June 26, 2012. Pursuant to that agreement, PES "agree[d] to hire all maintenance employees from the Marcus

3

Hook mobile workforce who have been working temporarily at the Philadelphia Refineries." App. 1205.

Sunoco sold its Philadelphia Refinery to PES in September 2012. On September 7, 2012, the MWF Employees were terminated by Sunoco. That same day, PES hired the MWF Employees to work at the Philadelphia Refinery pursuant to the terms of the Contribution Agreement and the MOU. The MWF Employees were thus "immediately re-employed by [PES]" as of the date of their termination as Sunoco employees. App. 1220.

On October 3, 2012, USW Local 10-901 sent a letter to Sunoco's Vice President of Labor Relations seeking severance benefits on behalf of the MWF Employees. App. 1237. A formal claim for benefits was sent to the Plan Administrator on October 22, 2012. App. 1217. The Plan Administrator, after gathering and considering relevant information including the Plan documents, the Contribution Agreement, the MOU, and the Settlement Agreement, App. 508, denied the requested benefits in January 2013. The Plan Administrator determined that the MWF Employees "were not terminated from employment in connection with the idling of the [Marcus Hook Refinery]," and therefore, were not eligible for severance benefits under the Plan. App. 1295. The Plan Administrator further concluded that although the MWF Employees were temporarily assigned to the Philadelphia Refinery after the idling of the Marcus Hook refinery, they were converted to permanent status after PES and Local 10-1 executed the MOU in June 2012. App. 1296. The MWF Employees appealed the Plan Administrator's initial denial

4

of benefits, but did not submit any new information on appeal. The Plan Administrator, after again considering the relevant evidence, upheld the denial of benefits.

Following the denial of benefits, the MWF Employees filed this suit in federal court. The parties cross-moved for summary judgment. The District Court awarded summary judgment to the Plan, concluding that the Plan Administrator's "denial of benefits was neither arbitrary nor capricious and was warranted under ERISA." App. 7.

The MWF Employees filed this timely appeal.

## II.

The District Court had jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331 as this action arises out of the denial of severance benefits under a plan subject to ERISA, 29 U.S.C. §§ 1001 et. seq. We exercise appellate jurisdiction under 28 U.S.C. § 1291.

"We subject the District Court's grant of summary judgment to plenary review, and we apply the same standard that the lower court should have applied." Smathers v. Multi–Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000)). Under that standard, summary judgment is appropriate only if there "is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Farrell, 206 F.3d at 278.

III.

The MWF Employees raise several arguments on appeal. They first argue that the Plan's decision to deny benefits was arbitrary and capricious because it is contrary to the Plan's clear language. The MWF Employees further argue that the Plan's decision to treat them as permanent employees was unsupported by substantial evidence. They next argue that the Plan's decision was erroneous as a matter of law because it violated labor laws. They finally argue that the District Court improperly excluded evidence pertaining to the Plan Administrator's decision and the effect of potential conflicts. We have considered the MWF Employees' arguments, and for the following reasons, we will affirm the District Court's judgment.

An administrator's benefit-eligibility determination is reviewed under an arbitrary and capricious standard if, as here, the Plan grants the administrator discretionary authority to determine benefits or construe the terms of the plan. Jordan v. Federal Exp. Corp., 116 F.3d 1005, 1009 n.8 (3d Cir.1997) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)). Under this "highly deferential" standard, an administrator's interpretation of a plan may be disturbed "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Courson v. Bert Bell NFL Player Ret. Plan, 214 F.3d 136, 142 (3d Cir. 2000) (quoting Abnathya v. Hoffmann-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (internal quotation marks omitted). Our Court has specified several factors for courts to consider in determining whether an interpretation of a plan is reasonable, including: "(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language

6

in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan." Howley v. Mellon Fin. Corp., 625 F.3d 788, 795 (3d Cir. 2010) (quoting Moench v. Robertson, 62 F.3d 553, 566 (3d Cir. 1995)).

Turning to that reasonableness analysis, the Plan's goal was to "alleviate financial hardships" employees might experience in connection with the idling of the Marcus Hook Refinery. App. 908. Here, the MWF Employees had a smooth transition to PES employment, and they did not experience any period of unemployment. They thus suffered no financial hardship in connection with the idling of the Marcus Hook Refinery and were awarded the same or better compensation as a result of the transfer to PES employment. Under these circumstances, payment of severance benefits to the MWF Employees would, in fact, be inconsistent with the Plan's goal because it would provide a windfall to employees who had never changed their jobs, were never out of work, and were provided benefits and salary by PES. See, e.g., Bradwell v. GAF Corp., 954 F.2d 798, 801 (2d Cir. 1992) ("[I]n the context of the sale of a business where the buyer retains the former owner's employees, it would give a windfall to award severance pay to employees who never changed their jobs and were never out of work."). Thus, the Plan Administrator's interpretation is consistent with the Plan.

Further, the Plan Administrator's interpretation does not render the language in the Plan meaningless.[1] Nor does the interpretation conflict with the requirements of ERISA. The MWF Employees argue that there was a structural conflict of interest because benefits would be paid out of Sunoco's assets, and the Plan Administrator was tasked with adjudicating both the initial claim and the appeal. However, as the District Court concluded, there were sufficient safeguards in place to comply with ERISA's requirements, such as the fact that the Plan Administrator understood his fiduciary role and reviewed appeals as if they were new claims. App. 27-29.

Finally, the Administrator's interpretation is consistent with the clear language of the Plan, which was intended to benefit only those negatively affected by the idling of the Marcus Hook Refinery. As we have discussed, the MOU and Contribution Agreement supported the Plan Administrator's determination that the MWF Employees were permanent employees of the Philadelphia Refinery. In light of this evidence, it was reasonable for the Plan Administrator to determine that the MWF Employees did not

---

[1] The Plan specified that several categories of employees were ineligible for benefits. App. 909. The MWF Employees argue that they do not fall into any of these categories because there was an explicit exception for "employees who are part of the Mobile Force, as designated by [Sunoco] in its sole discretion, and who are transferred to a position at [Sunoco's] Philadelphia Refinery for a limited period of time." App. 909. This argument is misplaced, however, because it ignores that the MWF Employees' status was converted to permanent assignment in the summer of 2012 after Sunoco and PES entered into the Contribution Agreement. The provisions of the Plan applying to employees of the "Philadelphia Refinery for a limited period of time" therefore have no applicability to the MWF Employees and are not rendered meaningless by the Plan Administrator's interpretation.

meet the threshold eligibility requirements under the Plan. Accordingly, the Plan Administrator's denial of benefits was not arbitrary or capricious.

The MWF Employees relatedly argue that substantial evidence did not support the conclusion that they were permanently transferred to the Philadelphia Refinery. For the reasons discussed above, ample evidence supported this determination.

The MWF Employees next argue that the Plan's denial of benefits unilaterally deprived them of a collectively bargained benefit in violation of the National Labor Relations Act. In support, the MWF Employees argue that the Plan Administrator knew that they were not represented in the bargaining with PES that gave rise to the MOU recognizing their status as permanent employees. We regard the MWF Employees' reliance on labor laws as misplaced as they have not asserted a claim for the violation of federal labor laws. In any event, any purported denial of a collectively bargained benefit is irrelevant to whether the MWF Employees were permanently assigned to the Philadelphia Refinery for the purposes of applying the written terms of the Plan. See In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 58 F.3d 896, 902 (3d Cir. 1995) ("The written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings.").

The MWF Employees finally contend that the District Court improperly excluded evidence, including Sunoco's bargaining notes, a Termination Agreement between Sunoco and Local 10-1, and a statement made under oath by the President of Local 10-1. The District Court limited its review to the administrative record and any documents that could have bearing on potential conflicts of interest. We perceive no error in this

9

determination.  See Fleisher v. Standard Ins. Co., 679 F.3d 116, 121 (3d Cir. 2012)

("When reviewing an administrator's factual determinations, we consider only the

'evidence that was before the administrator when he made the decision being reviewed.'"

(citing Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997)); see also

Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004) ("[I]n general, the record for

arbitrary-and-capricious review of ERISA benefits denial is the record made before the

plan administrator, and cannot be supplemented during litigation.").  Accordingly, the

MWF Employees are not entitled to relief on this ground.

IV.

For the foregoing reasons, we will affirm the District Court's order granting

summary judgment in favor of the Plan.