Kimie SISK, Donald N. Stange, Larry Jager, Richard Wilson, James L. Smiszek, Eleanor L. Daniels, Gary Boomer, John K. Capron, Robert J. Kaiser, David L. Vanderploeg, Mary J. Tschirhart, and Charles Dwyer, Jointly and Severally, Plaintiffs,

v.

The FIRESTONE TIRE & RUBBER COMPANY, Defendant.

No. 83–CV–1448–DT.

United States District Court,
E.D. Michigan, S.D.

Sept. 25, 1986.

Murray J. Chodak, Detroit, Mich., for plaintiffs.

Richard E. Rassel, James Stewart, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HACKETT, District Judge.

Plaintiffs in this case are former non-union salaried employees of Firestone Tire & Rubber Company's ("Firestone's") Romeo, Michigan plant. In November, 1982, Firestone sold the Romeo plant as an ongoing entity to the Brenlin Corporation ("Brenlin"). Pursuant to the sale, Firestone negotiated for and obtained a commitment from Brenlin to hire approximately half of the plant's former salaried employees. Each of the plaintiffs was hired by Brenlin at that time. Those employees who did not obtain continued employment under Brenlin ownership were paid "reduction in force" termination pay in accordance with Firestone's established policy. Those employees who were hired by Brenlin were not paid termination pay by Firestone. Plaintiffs are all within this latter group. It is their contention that pursuant to Firestone's policies and procedures they are entitled to termination benefits.

Claims for benefits under an employer's termination pay plan are governed by the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 et seq. (ERISA). *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985); *Holland v. Burlington Industries*, 772 F.2d 1140 (4th Cir.1985). In order to prevail on their claim that they are entitled to termination pay, plaintiffs must establish that Firestone acted in an "arbitrary and capricious" manner in denying it. *Holland, supra; Blakeman, supra.*

Firestone has moved for dismissal of plaintiffs' claims on summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.

The Sixth Circuit has reiterated the principles governing consideration of a motion for summary judgment in *Watkins v. Northwestern Ohio Tractor Pullers Ass'n.,* 630 F.2d 1155 (6th Cir.1980):

> The District Court may grant a motion for summary judgment only if it finds from the whole record before it that there are no material facts which are in dispute. It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion.

*Id.* at 1158; see also *Ghandi v. Police Department of the City of Detroit,* 747 F.2d 338 (6th Cir.1984).

Firestone's policy regarding termination pay is articulated in its Salaried Employee Handbook (the "Handbook") and in its Salaried Personnel Manual (the "Manual"). The Handbook distributed to Firestone employees included the following statement regarding termination pay:

> If your service is discontinued prior to the time you are eligible for pension benefits, you will be given termination pay if released because of a reduction in work force or if you become physically or mentally unable to perform your job.
>
> The amount of termination pay you will receive will depend on your period of credited company service.

There is no suggestion in this case that plaintiffs were "unable to perform" their jobs. Thus, any claim plaintiffs may assert in reliance on this Handbook provision would depend on whether they were "released because of a reduction in work force."

Firestone's Manual is an extensive document consisting of several hundred pages and designed to assist in the administration of personnel decisions. The Manual is continually updated. Although it is apparently marked "confidential," Firestone asserts that its consistent policy has been to make the Manual available to employees upon request. An employee may review the Manual in a facility's personnel office with a representative of the company's personnel department. (Affidavit of Thomas Robinson ¶ 3, 11).

Firestone's termination pay policies are set forth in Section 2.11 of the Manual. It provides "basic" termination pay for separations and discharges, limited termination pay for certain resignations and "reduction in force" termination pay where appropriate. The circumstances constituting a reduction in force are described in three sections of the Manual. Section 1.5.4 defines reduction in force generally as "termination of employment by the company without prejudice to the employee." Section 1.5.6 addresses Firestone's policies with respect to such matters as vacation, tuition reimbursement, exit interview and termination pay. Section 2.11.3 defines the relationship between reduction in force and termination pay:

> Despite the objectives of Firestone to provide stable employment, continued earnings and benefit coverages to its employees, there may be economic conditions that develop which make it necessary for the Company to temporarily or permanently terminate the employment of some of its work force.
>
> In the event such releases must be made, the following reduction in force policies have been established with the goal of minimizing the economic and mental stress of terminated employees during the period of time between release from Firestone and securing other employment (or re-employment by Firestone).

The Manual includes a number of provisions applicable to employees terminated pursuant to a reduction in work force. Among them are provisions for selection of employees to be terminated, special consideration for rehire and temporary insurance benefits. There is no reference in the Manual to possible payment of termination pay in the event a plant or division is sold as an ongoing concern.

Consistent with the policies expressed in the Handbook and the Manual, Firestone has never paid termination pay to salaried employees upon the sale of a plant as an ongoing concern where Firestone has obtained continued employment for its employees with its successor. The company has awarded termination pay to approximately 1,650 of the 2,900 salaried employees who ceased working for Firestone between 1976 and 1982 as a result of domestic plant disposition. All of those employees were either terminated at the time of plant closure or reduced in force prior to the sale of a plant as an ongoing business.

Firestone's history is consistent with its policy to provide compensation to employees who actually suffer in a reduction in force and to avoid windfalls for those who do not. An employee who never leaves his job when a plant is sold has no reasonable expectation of receiving termination payments. In the present case, no employee has suffered a loss as a result of the change in the plant's ownership. It was neither arbitrary nor capricious that Firestone refused to award plaintiffs a windfall in the form of termination pay.

This court's decision is in accord with several recent cases involving former salaried employees who sought termination payments from Firestone when plants were sold. *Davidson, et al v. Firestone Tire & Rubber Company* (United States District Court, Western District of Tennessee, No. 84-1215, May 30, 1986) [Available on WESTLAW, 1986 WL 15770]; *Bruch et al v. Firestone Tire & Rubber Company*, 640 F.Supp. 519 (E.D.Pa.1986); *Adcock v. Firestone*, 616 F.Supp. 409 (M.D.Tenn.1985).

The *Adcock*, court considered the same two primary factors in reviewing Firestone's denial of termination pay: the provisions of the severance pay plan and Firestone's past practices at other plant facilities. This court adopts, as did *Adcock*, the approach taken by a majority of federal courts:

> [c]ontinued employment with a successor corporation following the transfer of ownership, although characterized by a termination of employment with the predecessor corporation, does not constitute an involuntary reduction in work force by the predecessor corporation thereby entitling the employees to severance pay benefits. *Adcock, supra* at 421.

This court concludes that there was no "reduction in work force" pursuant to the Manual, the Handbook or Firestone's previous practice, and that plaintiffs were not entitled to receive termination pay. Firestone's decision not to extend such termination pay was not arbitrary or capricious.

There remains no genuine issue of material fact. Therefore defendant's motion for summary judgment will be granted. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.