**H.W. (Bill) AWBREY, Donal Ray Boyd, Raymond D. Bennett, James R. Smith, and Adan T. Venegas, Plaintiffs–Appellants,**

v.

**PENNZOIL COMPANY, a Foreign Corporation, and Duval Corporation, a Foreign Corporation, Defendants–Appellees.**

No. 90–2287.

United States Court of Appeals, Tenth Circuit.

April 7, 1992.

Warren F. Reynolds, P.A., Hobbs, N.M., for plaintiffs-appellants.

William C. Slusser, of Baker & Botts, Houston, Tex. (John E. Neslage and Beverly A. Young of Baker & Botts, Houston, Tex., Albert L. Pitts, of Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, N.M., with him on the briefs), for defendants-appellees.

Before HOLLOWAY and McWILLIAMS, Circuit Judges, and CAUTHRON, District Judge.[*]

CAUTHRON, District Judge.

Plaintiffs, all former salaried employees of defendant Duval Corporation, a wholly-owned subsidiary of defendant Pennzoil Corporation, appeal the district court's order granting summary judgment to defen-

---

[*] The Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation.

dants. Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, alleging they were entitled to certain benefits from defendants under defendants' benefit plans. They sought severance pay and certain retirement-related benefits such as medical and life insurance, social security supplement, and automatic spousal benefit. We affirm the district court's grant of summary judgment to defendants.

## I.

The relevant facts are not in dispute. Defendant Pennzoil Corporation, through its subsidiary, Duval Corporation, operated a potash mine in New Mexico at which plaintiffs were employed. Defendants sold the mine as an ongoing concern to Western Ag Mineral Corporation on November 15, 1985. Western Ag continued plaintiffs' employment without interruption. The transfer of ownership took place at midnight, November 14, 1985, so that plaintiffs ended their employment with defendants on November 14, 1985, and became employees of Western Ag at 12:01 a.m. on November 15, 1985. None of the plaintiffs lost any work time.

Pennzoil's corporate policy manual contained a severance pay plan providing in part:

PURPOSE: To state clearly the policy for severance payments when permanent jobs in the Company are eliminated.

POLICY: The Severance Pay Plan will provide one week's pay for each completed year of service under the following conditions:

1. A permanent job has been eliminated.

2. The employee has at least one full year of service or more.

3. The employee has not:

    a. Been offered a comparable job.

    b. Been terminated for unsatisfactory performance.

    c. Been terminated for proven dishonesty or conduct prejudicial to the best interest of the Company.

    d. Terminated voluntarily.

    e. Been terminated due to the completion of a temporary job assignment.

Plaintiffs' App. at 32.

Plaintiffs argue that because their employment with the defendants was terminated on November 14, 1985, they are entitled to the above-described severance benefit. Defendants argued to the district court that plaintiffs are not entitled to severance pay because (1) no permanent jobs were eliminated, and (2) all employees were offered comparable jobs.*

Defendants' benefits plans also included certain retirement and retirement-related benefits, described in part below, to which plaintiffs also claim entitlement:

### XVIII. COVERAGE FOR RETIRED EMPLOYEES AND DEPENDENTS

Upon retirement, if you have at least five years of service or are age 65 or older, medical benefits will continue for you and your eligible dependents. A booklet explaining benefits for persons not eligible for Medicare and for those who are eligible for Medicare will be provided to you by your local personnel office.

Plaintiffs' App. at 99; Defendants' App. at 71.

### XI. AFTER RETIREMENT

When you retire (early, normal or postponed) with at least five years of service or at age 65 or older, the Company provides $4,000 in life coverage at no cost to you. You have the privilege to convert amounts in excess of $4,000 up to the total amount of insurance you had immediately prior to retirement.

Appellants' App. at 100; Defendants' App. at 91.

### XII. LOSS OF ANTICIPATED BENEFITS

Anticipated benefits from the group life insurance plan would not be realized under the following conditions:

* The parties agree in this appeal that a termination of employment occurred. Therefore we do not consider the question of whether a termination occurred.

1. Your death occurs more than 31 days after you terminate your employment;
2. You transfer to a job classification that does not meet the eligibility requirements;
3. At retirement you have less than 5 years service or have not attained age 65.

*Id.*

Plaintiffs argue that they are entitled to these benefits because they would have reached the age necessary to retire, would have retired, and would have received these benefits if defendants had not terminated their employment. Defendants argue that none of the plaintiffs were eligible for retirement benefits at the time Western Ag bought the potash mine.

In addressing defendants' motion for summary judgment, the district court first determined that it was required to review defendants' decision to deny plaintiffs' claims under a de novo standard of review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The court first found that none of the benefit provisions were ambiguous, and therefore extrinsic evidence to determine their meaning was not needed. The court then found that plaintiffs had received offers of comparable jobs from Western Ag and thus were not entitled to severance pay benefits. It also determined that because none of the plaintiffs had retired, and the retirement and retirement-related benefits were conditional upon retirement, plaintiffs were not eligible to receive such benefits. The defendants' motion for summary judgment was granted.

## II.

In reviewing a grant of summary judgment on appeal, we apply a de novo standard of review to the district court's conclusions of law. *Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). When considering summary judgment, both the district court and the appellate court view the facts in a light most favorable to the non-movant, and construe all reasonable inferences against the movant. *Wheeler,* 825 F.2d at 260; *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). However, in this case, the facts material to the outcome of the appeal are not in dispute, and therefore we need address only the district court's legal conclusions. *Id.* Finally, "[w]e are not limited to the grounds upon which the trial court relied but may base summary judgment on any proper grounds found in the record to permit conclusions of law." *City of Chanute v. Williams Natural Gas Co.,* 955 F.2d 641, 647 (10th Cir.1992) (citing *United States v. Colorado,* 872 F.2d 338, 339 (10th Cir.1989)).

## III.

Plaintiffs' first argument is that the district court should have considered extrinsic evidence to determine whether the Western Ag jobs were comparable to the Pennzoil/Duval jobs. They argue that if extrinsic evidence had been considered, a material issue of fact would have arisen regarding whether the jobs are comparable.

The district court found the severance pay plan unambiguously excluded plaintiffs from severance benefits, because plaintiffs were offered comparable jobs. Nothing in the plan restricted a comparable job as being with the same employer. Therefore, if a former employee of defendants is offered a job with a different employer, the job may still be comparable. Plaintiffs' arguments to the contrary are simply without merit.

In New Mexico, as in other jurisdictions, clear and unambiguous contract provisions are conclusive. *Rushing v. Lovelace–Bataan Health Program,* 93 N.M. 168, 598 P.2d 211 (1979). The usual and customary meaning of contract terms must be given effect. *Sun Vineyards, Inc. v. Luna County Wine Dev. Corp.,* 107 N.M. 524, 760 P.2d 1290 (1988). A court is without authority to alter or amend contract terms and provisions absent an ambiguity in the contract. *State ex rel. Robins v. Hodges,* 105 N.M. 48, 728 P.2d 458 (1986). When an

insurance or other benefit provision falls within the scope of ERISA, it is still subject to these general contract principles. *See generally, Senn v. United Dominion Indus., Inc.,* 951 F.2d 806, 818 (7th Cir. 1992) (court would not amend clear and unambiguous contract terms in a case brought under ERISA); *Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge,* 827 F.2d 1324 (9th Cir.1987) (extrinsic evidence inadmissible to interpret unambiguous contract terms); *Anderson v. Pittsburgh–Des Moines Corp.,* 893 F.2d 638, 640 (3d Cir. 1990) (clear and unambiguous contract provisions raise no factual issues).

We will not read into the severance pay plan a requirement that, by its clear and unambiguous language, is absent. There is simply no requirement, in the contract or at law, that a comparable job means one with the same employer. *See also Holland v. Burlington Indus., Inc.,* 772 F.2d 1140, 1149 (4th Cir.1985) (jobs with different employers were comparable, where employees had continuous employment in the same positions), *aff'd sub nom. Brooks v. Burlington Indus., Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986).

■ The question that remains is whether the Western Ag jobs were comparable to the defendants' jobs. Western Ag retained all of the plaintiffs as employees at the potash mine, at the same positions and salaries. Western Ag's employment benefits differed somewhat, but the differences are minor and do not cause the jobs to be incomparable. The new employer provided such benefits as medical and dental insurance, retirement benefits, long and short term disability coverage, term life insurance, vacation pay, sick leave, and a 401K tax-deferred savings plan. Defendants provided much the same benefits package, with some minor differences.

We agree with the district court's observation that "comparable" does not mean "identical." Some differences in the benefit plans are to be expected. The district court found that the jobs were comparable, and we agree. *See Garavuso v. Shoe Corps. of Am. Indus.,* 709 F.Supp. 1423,

1429 (S.D.Ohio), *aff'd,* 892 F.2d 79 (6th Cir.1989) (new employment comparable to former employment despite differences in job duties and pay); *Sejman v. Warner–Lambert Co.,* 889 F.2d 1346, 1350 (4th Cir. 1989) (workers who continued to work at same job, in same facility, at same tasks, for *comparable* pay and benefits were not entitled to severance benefits), *cert. denied,* —— U.S. ——, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990).

The district court also noted that courts have interpreted severance pay plans as forms of unemployment benefits, and not as bonus payments to be received on termination. *See, e.g., Lakey v. Remington Arms Co.,* 874 F.2d 541, 545 (8th Cir.1989) (no severance pay due when terminated employees immediately rehired by successor in comparable jobs); *Holland,* 772 F.2d at 1140 (unemployment compensation is major purpose of severance pay provisions); *Sly v. P.R. Mallory & Co.,* 712 F.2d 1209, 1211 (7th Cir.1983) (quoting with approval district court's observation that "[s]everance pay is generally intended to tide an employee over while seeking a new job and should be considered an unemployment benefit"); *Garavuso,* 709 F.Supp. at 1428 (policy behind severance pay plans is to aid terminated employees through periods of unemployment when employee is without income); *Aquin v. Bendix Corp.,* 637 F.Supp. 657, 662 (E.D.Mich.1986) (reasonable view of severance pay plan's purpose is to minimize hardship caused by unemployment). Such authorities lend support to the district court's finding that the terms of the severance pay plan were not ambiguous.

Another relevant point regarding plaintiffs' claims for severance pay is that none of them missed any work or suffered any loss of income. Under such circumstances, courts have found that severance pay would be an unjustified windfall to the employee. " 'To award severance benefits ... would result in a windfall to the employees who retained their positions with the purchaser of the going concern....' " *Sly,* 712 F.2d at 1211 (quoting with approval from district court's opinion); *Aquin,*

637 F.Supp. at 663 (to award severance benefits on similar facts would be to "grant a windfall to plaintiffs"); *Sejman*, 889 F.2d at 1350 (payment of severance benefits "would seem even more of a windfall, because it would award [benefits] to persons who never changed jobs and were never out of work"); *Lakey*, 874 F.2d at 545 (change in employer caused no lack of work to employees, therefore severance benefits would have been a windfall to the employees); *Bradwell v. GAF Corp.*, 954 F.2d 798 (2d Cir.1992) (severance pay to employees who never changed jobs and were never out of work would be a windfall (citing *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir.1990)), *cert. denied*, — U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991)); *Acton v. Tosco Corp.*, 815 F.2d 1161, 1163 (8th Cir.1986) (per curiam) ("[t]o award severance benefits ... would result in a windfall to the employees who retained their positions with the purchaser") (quoting *Sly*, 712 F.2d at 1211); *Schwartz v. Newsweek, Inc.*, 827 F.2d 879, 883 (2d Cir. 1987) (also quoting from *Sly*, 712 F.2d at 1211); *Jung v. FMC Corp.*, 755 F.2d 708, 714 (9th Cir.1985) (also quoting from *Sly*, 712 F.2d at 1211); *Sisk v. Firestone Tire & Rubber Co.*, 670 F.Supp. 695, 697 (E.D.Mich.1986) (severance pay to plaintiffs would have been a windfall where employees suffered no loss).

Finally, as the district court noted at page 12 of its memorandum opinion, quoting *Schwartz*, 827 F.2d at 883, "a recovery by plaintiffs in these circumstances would reduce the incentives for employers to attempt to secure positions for employees with the purchaser of a division when those employees might well prefer such employment over a relatively small amount of severance pay."

We therefore reject plaintiffs' arguments that the district court erred in granting summary judgment to defendants on the severance pay claim. The severance pay provision clearly and unambiguously provides that plaintiffs do not qualify for severance benefits. Extrinsic evidence is not relevant to the provision's interpretation.

## IV.

Plaintiffs next complain that the district court erred in finding that because none of them had reached the minimum retirement age, they were ineligible for retirement benefits from defendants. We find no error.

It is undisputed that at the time Western Ag purchased the potash mine from defendants, none of the plaintiffs had reached age 55, the minimum age under the plan for retirement. It follows that none of the plaintiffs had retired. The retirement plan's medical benefits provision (recited in Part I above) provides the continuation of medical benefits to employees "[u]pon retirement...." The life insurance provision of the same plan provides life insurance to employees "[w]hen you retire (early, normal or postponed)...." Thus what the plaintiffs seek are benefits they would have received had they remained employed by the defendants until their retirement.

We agree with the district court that the plan unambiguously requires retirement before entitlement to retirement-related benefits. It is clear that none of the plaintiffs had retired, and therefore none of them were entitled to the benefits. "[T]he sale of a business or a portion of a business does not impose a fiduciary duty on an employer to guarantee future, nonvested, benefits." *Dougherty v. Chrysler Motors Corp.*, 840 F.2d 2, 3 (6th Cir.1988) (citing *Coleman v. General Elec. Co.*, 643 F.Supp. 1229, 1239 (E.D.Tenn.1986), *aff'd*, 822 F.2d 59 (6th Cir.1987)); *see also Mead Corp. v. Tilley*, 490 U.S. 714, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989) (ERISA does not create entitlements to contingent early retirement benefits in the event the retirement plan is terminated by the employer after the sale of a subsidiary); *Ashenbaugh v. Crucible Inc. 1975 Salaried Retirement Plan*, 854 F.2d 1516, 1529 (3d Cir.1988) (holding that a plan such as the instant plan "cannot be construed to guarantee any employee a right to remain [an employee] for any length of time or the benefits that such a right to continued employment would entail."), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989).

Therefore, as a matter of law, plaintiffs were not entitled to retirement-related benefits, and we agree with the district court that the arguments to the contrary are insufficient to raise a genuine issue of fact for trial.

## V.

The judgment of the district court is, in all respects, AFFIRMED.