**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 5 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TERRY A. GARVIN; JOHN MCGRAIL;
FERDNAND ADAMSON; EDITH
AITKEN; MARVA AKINS; DOUGLAS
R. ALLEN; SHIRLEY ALLEN; LOREN
ALM; SHEILA ALTMAN;
CORNELIOUS ANDERSON; PEGGY C.
ANDERSON; CLAUDETTE B.
ANTERIN; ESTHER ARNOLD;
KENNETH G. ARSENAULT; JERRY M.
ASHLEY; LINDY ASHLEY; JOHNICE
M. AUTREY; ROY AUTREY; WANDA
BAGLEY; WANDA BAGLLEY; W. E.
BAKER; MARJEAN BALDINI;
SUZANNE
BARKER; DOROTHY J. BASS; PEDRO
P. BEJARANO; CATHERINE A.
BELLIS; JIMMY BELVIN; STEVE
BENISEK; HELLEN J. BENNETT;
EUNICE F. BERRY; MARK BIANCHI;
MARY BIGELOW; RUSSELL
BIGELOW; ESTHER B. BILLIARD
CAROLYN K. BISHOP; FRANK
BLACK; JO ANN L. BLACK; LYNDEL
E. BLANTON; PATSY H. BLEMMEL;
RICHARD D. BLEMMEL; LETHA

No. 98-6007

BLEVINS; BENNIE H. BOHANNON;
LEE BOWEN; DORTHY BOWENS;
JOYCE BOYD; RUTY W. BOYER;
JEWEL L. BOYLES; HARDENIA
BRADFORD; MARGARET B. BRADY;
WYONNA BRANDT; MARY
BRANNON; FLORRIE L. BRANT;
LOUISE BRANUM; MARY BRIGGS;
PAUL C. BRIGGS; LINDA A. BRIM;
ERNEST W. BROWER JR.; CAROL
GENE BROWN; CECIL R. BROWN
CHARLES BROWN; ELSIE BROWN;
LOTTIE B. BROWN; MARION
BROWN; STEPHEN M. BROWN;
CAROLE JOAN BROWNING; J. T.
BRUNDAGE, a/k/a Jack Brundage;
GEORGIANNA BRUNO; JOHN W.
BRYANT; MARY BURTON; ELMER
RAY BUTTON; BEVERLY CAGLE;
TONY CAGLE; AL CAGLE; ROBERT
P. CAMPBELL; DANIEL T.
CANTRELL; LINDA CANTRELL;
VING DANG CAO; BERTHA R.
CARLTON; THELMA CARMICHAEL;
ADRIAN CARTER; DARLENE
CARTER; ROBERT CARTER; FRED
CASTEEL; GLENDA S. CASTEEL;
DALE O. CEASE; QUANNAH
CHADWELL; BETTY J. CHADWICK;
MAX E. CHANCE;
WILLIETTE TERESA CHILDS; MIKE
CLAY; HULSUK CLEVENGER;
RAYMOND COBB; DAVID G.
COLEMAN; TOMMY COLEMAN;
DAN COLEY; RACHEL COLWELL;
DAVE L. COMSTOCK; DIANNA
CONNER; TIM D. CONNER;
JOHN COOGLE; NORMA S. COONE;
PAUL D. COSBY; CATHERINE

COULTER; CHARLES L. COX; CHARLOTTE M. COX; DEANNA J. COX; RAY L. COX; CHARLENE COYLE; DONALD D. COYLE; RODGER D. CRAFT; BETTY CRAIG; JOE F. CRAIG; BENNY CRAMER; MICHAEL CRANDALL; MAURICE F. CRAWFORD; WILMA M. CRISP; BOBBIE CRUMP; TILDA CUMMINGS; WINSTON CUTTER; CARROLL DARNALL; MARGARET DARNALL; ORVELLE DAVIS; PATRICIA A. DAVIS; SANDRA L. DAVIS; MILDRED DE BUSK; DAVID DEERINWATER; CAROLYN C. DEMOE; DENNIS DEMOE; GARY DENNIS; BRENDA R. DEZARN; JIMMY G. DEZARN; GAY L. DIAMOND; VAN NGO DICH; MARY DICK; WAYNE DINKINS; MOSSIE F. DOKU; JAMES DON DERO; JOAN DON DERO; JEAN M. DOTSON; WESLEY P. DRABEK; ELAINE DUEK; MARTHA L. DUNLAP; CONG THANH DUONG; RYMON EARLS; R. L. EDRALIN, a/k/a Eddie Edralin; FAY LYNN EDWARDS; OTIS E. EDWARDS, JR.; JOQUITTA EK; MARTHA A. ELLIS; AMANDA ELLISON; ZINA ENGLISH; VIRGINIA ERVIN; BEVERLY ESTLINBAUM; FRED ESTLINBAUM; R. W. ESTLINBAUM; MARY EUBANKS; EASTMAN JOE FACTOR; DEBORAY FARRIOR; RAY FARRIOR; CHARLES WAYNE FAWCETT; AARON FELIX, SR.; JANICE FELIX; NORMA LEE FELIX; RICHARD FERGUSON; REGINALD FIELDS;

FLETCHER; MARTHA JAN FORD; MARY ANN FORD; RITA J. FOSTER; KAY F. FOWLER; MATTIE B. FRAZIER; HELEN FRESHOUR, a/k/a C. W. Freshour; MARY D. FRYE; PHYLLIS M. FULLER; ERMA J. GAGE; MICHAEL A. GAGE; DANIEL J. GAGNATH; BETTY J. GAINES; DOMINGO J. GARCIA; RUBY GARDENHIRE; MI SUN GARDNER; ERIC W. GEORGE; K. C. GEORGE; BARBARA GEORGE-REILLY; RICHARD GERBER; MEL D. GERING; ROBERT GIBBS; CAROLYN GIBSON; MARY M. GIBSON; DIXIE GILBERT; EVA JOLENE GILBERT; JOE W. GILBERT; KAMENCITA GISSANDANER; RICHARD W. GLASCO; SHIRLEY GLOVER-KNIGHT; ELSIE GOLSON; DONACIANO S. GONZALES; JERRY GOODNER; LEE P. GORRELL; JO GOZA; LAVOY L. GREEN; SHIRLEY GREEN; TOMMY GREEN; KATHLEEN GREER; JOHNNIE GREGORY, JR.; EMMA GRIDER; ANN GRIFFITH; EDWARD GRIFFITH; BETTY P. GRIGGS; ROBERT W. GRIGGS; WESLEY GUDE; ARTHUR GUESS; MARY HALEY; BARBARA HALL; ROLAND E. HAMBROOK; FRANCES COLLEEN HANNEMAN; ELLA P. HANSON; CARLETTA HARDON; HOPE G. HARE; FRANCIS HARKER, SR.; IMOGENE HARRIS; JAMES E. HARRIS; JAMES W. HARVIN; CLAUDIA HASH; PATRICIA B. HAUSER; ARCHIE HAWKINS; RICK HAWKINS;

4

VIRGINIA HAYES; BELLIJIM HEAD; MARILYN S. HEATHMAN; BETTY R. HENSLEY; SHERRIE HERSHEL; CAROLYN HICKS; JEANIE M. HICKS; DOROTHY HIGNITE; JOHN HILDERBRAND; CAROL HILL; MARGARET S. HINTON; DUNG NGOC HO; SHIRLEY A. HOLDEN; HERMAN TYRONE HOLLAND; JOHN DAVID HOLLAND; GWENDOLYN M. HOOD; WANDA L. HOOD; CAROL A. HORTON; MARY HOUSNER; C. R. HOWARD; OMA HOWARD; CONNIE HUFF; SANDRA HUGHART; SANDY HUMPHERY; MARION HURLEY; WILLIAM HURT; JANICE HUTCHENS; JERRY D. HUTCHENS; DARRELL HUTTON; SHERYL HUTTON; C. P. IRBY; DEBORAH JACKSON; WILLIAM L. JACKSON; JERRY JACOBS; FRANCES L. JAMES; LILLIAN JAMES; LINDSEY JASMER; DOUGLAS M. JOHNSON; ETTA M. JOHNSON; MARGARET L. JOHNSON; MARY JOHNSON; MINOLA H. JOHNSON; GEORGIA L. JONES; JOHN E. JONES; MARCIA JONES; MATTIE L. JONES; DONALD KEASLER; ALVIN KEITH; SHIRLEY A. KELLEY; CONNIE KELLIAN; JOAN E. KENNEDY; A. E. KENT; CAROL KEYLON; EDDIE KEYLON; KATHERINE KILBY; HAZLE KING; RUTHIE O. KING; ROY A. KLEPPER; RONALD G. KLOPFENSTEIN; GERTRUDE KROUTIL; JACQUELINE KRUTZ; JACKIE LACK; MARY J. LAMBERT; ESTHER B. LAMPKIN; CARL J. D. LANE; RUTH M. LANE;

RUTH MARIE LAVALAIS; BEVERLY LAWSON; DOUGLAS LAWSON; RALPH LEE; AMELIA LIGHTNER; WILLIAM C. LOCKE; GLENN LOGAN; CARLOS P. LOPEZ; SANDRA LORENZEN; IMA JEAN LOVELACE; DONALD LOWE, SONJA W. LOWERY; WANDA JEAN LOWRY; PATRICIA W. LYTAL; DON MADDOX; BERTHA MAKER; LANA K. MANOR; SHARON MARINE; MERLE A. MARSH; SHARON FAYE MARTIN; JOE MARTINEZ; CHARLES L. MASON; RICHARD S. MASON; JOHN MASSINGALE; A. JOAN MATHES; PAUL MATTINGLY; LINDA B. MCCLISH; JERRY L. MCCONNELL; JOANN B. MCCRACKEN; JUDY C. MCCRACKEN; GENEVA MCCRAW; ROBERT A. MCDANIEL; CAROLYN MCDONALD; MARY MCELYEA; DOYLE D. MCENTIRE; FINES R. MCEWEN; LOLA MCEWEN; JANET MCGRAIL; CARY MCMILLIAN; SAUNDRA MCMILLIAN; BRUCE MCNENNEY; WILMA G. MCREE; ALTER L. MEANS; LOUIS MENDOZA;CHARLES W. MERRILL, JR.; MELBA JEAN MERRILL; BENJAMINEMESTANZA; JAY D. MICHAEL; CAROLYN M. MILLER; CHARLES S.MILLER; DWIGHT MILLER; RALPH K. MILLER; SARA J. MILLER; EARLK. MILLUS; MARY B. MILLUS; WILLIAM S. MIMS; MARGA S.MIRANDA; RICHARD B. MIRANDA; ANTHONY D. MIXON; MARY B.

6

MIXON; ALFRED W. MOCK; MARICELA H. MONTOYA; CEILIA MOONEY; DON MOONEY; ALVIN MOORE; BILL W. MOORE; JOHN C. MOORE, JR.; ALBERT MOORE, JR.; JORGE L. MORALES; WILLIAM R. MORRIS; RAYMOND MORRISSEY; DENNIS MORROW; MARGARET MOSLEY; BOBBIE MOUNT; TIM MOUNT;
SARAH A. MULKEY; WILLIAM M. MUNCH; BURLENE MUNRO; ROBERT J. MUNRO; RUBY P. MURRY; ANN NALLEY; ALICE NEALY; GENE NELSON; EMERALD NESS; SHIRLEY NESS; CAROL NEWMAN; TOMMY E. NEWMAN; LONZETTA NOLEN; RONALD G. NORRIS; JIMMY E. NOVOTNY; HELEN NOWICKI; KENNITH NOWICKI; JACK GARY NOWLIN; GLORIA O'CONNER; MARCELLA ORR; ROBERT OSBORN; JOHN D. OWEN; CHARLES W. OWENS; RUSSELL OWENS; LLOYD DON OWREY; TAMMY SUE RAINS; JOSEPH D. RAJER; JACK RAMER; FLETCHER RAMSEY; MARIA IRMA RANGEL; PATSY R. READNOUR; BERTHA REAVES; ARNOLD G. RHODES; LINDA B. RICHARDSON; ALAN D. RIDGELY; RANDOLPH E. RINACA; HELLEN R. ROBBINS; JAMES R. ROBERSON; CATHERINE ROBERTS; NORMA JEAN ROBERTS; BEAULAH ROBINSON; JOHN E. ROBINSON; VERNON ROBINSON; DOROTHY ROBNETT; BOBBY JOE ROGERS; ETHEL C. ROGERS; PAUL

ROY; WILLIAM D. ROY; JANIE RUSSELL; BARBARA M. RUST; EARNEST SAGAL; PAULA SAGAL; EBBIE E. SANDERS; RON SANDERS; RUTH ANN SANDERS; ALFREDO L. SAUCEDA; JUDY PADGETT; JOHN M. PAGE; MARTINA R. PAGE; SANDY H. PAGE; SUSAN S. PANNELL; DONATA PARDUE; DONALD PARKS; FRANCES J. PARKS; COY N. PATTERSON; DIANA PATTERSON; FRANK PATTERSON; WILLELLA PAULEY; E. E. PERCIVAL; RONNIE PERKINS; JENICE PERRY; EDWARD R. PETERS; NANCY F. PEYTON; RONALD PFORTMILLER; ESTER B. PICKENS; A. L. PIERCE; PEGGY PIERCE; JAMES L. PIKE; MARGARET PITT; CONNIE PONDS; LOU ANN PORTER; PRISCILLA M. PORTER; DAVID K. POWELL; BETTY PRIEST; SHIRLEY B. PRIM; DOUGLAS A. PUCKETT; ESTHER QUNTERO; MAX RAGLAND; KENNITH RAINBOLT; CONNIE E. SAULSBERRY; AVIS SAVAGE; LEROY D. SCHEIN; LETA J. SCHILLING; DONNA R. SCHLEICHER; GEORGE H. SCHLEICHER; LARRY SCHMIDT; CONSTANCE T. SCOTT; MARTHA SEBRING; JERRY SEXTON; MICHAEL A. SHAVER; FAYE S. SHAW; JUDY SHAW; CAROLYN SHEEHAN; RICHARD B. SHEFFER; EVELYN M.SHELDON; CARL L. SHELTON; ALMA P. SHORE; MICHAEL SHROUF; AL SHULER; EVELYN W. SHULTZ; JOSE E. SIGALA;

8

SIGALA; OZETTA M. SLOAN; SHERL SLOHN; LELIA M. SMILEY; MARY D. SMILEY; BOB SMITH; DEBRA Z. SMITH; GLEN H. SMITH; GLORIA R. SMITH; MARY D. SMITH; MILDRED A. SMITH; WANDA SMITH; LOIS SOCKWELL; DENNIS SPEARS; CLARISSA B. SPEIGHT; ROY SPILLMAN; KATHLEEN STARR; EMIL J. STEJSKAL; DON STEVENS; JIM L. STEWART; EARL D. STILL; ELIZABETH STOUT; CAROLYN W. STRAMSKI; JOHN M. STYLES; NUMBER R. SUTTON; SHIRLEY H. SUTTON; JOYCE SWANEGAN; MANY SZCZEPKA; SONJA SZCZEPKA; CAROLL TARRANT; EVA THOMAS; FRED TINSLEY; JOHNNY TISDEL; MURLENE TOBLER; BILLIE M. TODD; ROSS P. TOMBERLIN; HOWARD TOYER; CLARENCE TRAIL; KAREN TRAIL; RONALD TROWER; KELLY TROYER; MARCUS TUCK; BRUCE TURNER; MARVA J. TURNER; DEBORAH UPTON; PETE URIAS; GUYNELLE USELTON; DANA VALLEY; WALTER VALLEY; MARK VUCKNVICH; NANCY WAIDLICH; LARRY W. WALDEN; MARIAN J. WALDEN; HELEN WALKER; CHARLES WALSH, JR.; WILLIAM WALTON; HERBERT W. WARD; DAVID WARE; JAYNE WARE; GARY WARNKE; CLINT WARTCHOW; HELEN WARTCHOW; PHYLLIS J. WAY; GARY D. WEBB; TALMAGE WEBB, JR.; JOHN B. WEBER; HSIAOYEN WELCH; VIOLET J.

WELCH; VIOLET J.WELLS; WALTER ANDREW WELLS; GLORIA RICE WEST; ELIZABETH WHELAN; NATHANIEL WHITE, JR.; RONNIE WHITE; ALICE WHITLOW; BARBARA WICKER; CLIFFORD WILKERSON; KAREN C. WILKINS; DARLENE WILLIAMS; JACQUITA L. WILLIAMS; MARTHA F. WILLIAMS; NELDA JOSEPHINE WILLIAMS; MINNIE WILNER; MELAINE WILOUGHBY; STEVEN WILOUGHBY; ARDIS D. WILSON; FAYONA B. WILSON; FRANK D. WILSON; JOYCE WILSON; SAVANNAH M. WILSON; GEORGE WINBURN; NICK WINES; MAC R. WINKLER; GARY WINTER; GLENNA WINTER; EDWIN C. WISE; FREDERICK WISE; LINDA G. WISE; ROBERT WOOD; J. H. WOODARD; JOHN H. WOODFORD, JR.; LENA J. WOODRUFF; BILL WOODWARD; BOBBY G. WOODWARD; EDDIE JOCE WOODWARD; RANDI H. WOODWARD; MARGARET A. WOOLDRIDGE; NORMA WOOLDRIDGE; BILLIE WORKMAN; MARGIE WOSIKA; BARBARA WYSE; GARY WYSE; PATSY YADON; FRED E. YEAGER; EARLENE J. YOUNG; SARAH A. YOUNG; AGNES ZAMORA; ROGER G. ZIEGERFUSS,

Plaintiffs - Appellants,

v.

AMERICAN TELEPHONE &
TELEGRAPH CO., a New York
corporation as the successor in interest to
AT&T Network Systems, Inc.,

      Defendant - Appellee,

------------------------

LUCENT TECHNOLOGIES, INC.,

      Intervenor - Appellee.

Appeal from United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-97-412-A)

James A. Ikard, Oklahoma City, Oklahoma, (Michael A. Toups, Weller, Green, McGown & Toups, L.L.P., Beaumont, Texas, and A. Hoyt Rowell, III, Ness, Motley, Loadholt, Richardson & Poole, Charleston, South Carolina, with him on the briefs) for the appellants.

Charles C. Jackson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Illinois, (Eric J. Gorman and Jill S. Mulderink, with him on the briefs) for the appellees.

Before **TACHA**, **BARRETT**, and **HENRY**, Circuit Judges.

**BARRETT**, Senior Circuit Judge.

     Terry A. Garvin, *et al.,* (collectively "Appellants") appeal from the district court's grant of summary judgment in favor of American Telephone and Telegraph Company

(AT&T) on their claims to recover termination allowances brought pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).

Facts

Appellants were employees of Oklahoma City Works of AT&T Network Systems Incorporated and were members of the International Brotherhood of Electrical Workers, Local Union 1599, AFL-CIO, the International Brotherhood of Electrical Workers Union, Local Union 2021, AFL-CIO, or the International Union, United Plant Workers of America, Local Union 795 (collectively "the Unions"). In May 1995 and August 1995, the Unions and AT&T entered into three collective bargaining agreements (CBAs).[1] These CBAs provided in Article 18 that "[a]n employee LAID OFF shall be granted a Termination Allowance . . .." (Joint App. Vol. 1 at 257, Art. 18 § 1.) "Laid off" is defined as "[a] termination of employment arising out of a reduction in the force due to lack of work." *Id*. at 162, Art. 3 § 1(g). It is undisputed that an employee is not entitled to a termination allowance if "the employee is recalled or re-employed as a regular employee by AT&T or any of its affiliates, subsidiaries or entities." *Id*. at 258, Art. 18 § 3(a)(2)(ii). *See* Brief of Appellants at 6 ¶c.

In November 1995, AT&T created Lucent Technologies Incorporated (Lucent), a wholly owned subsidiary, to control AT&T's systems and technology business and operations. (Joint App. Vol. 2 at 861.) On February 1, 1996, AT&T transferred its rights,

---

[1]     The relevant language of the CBAs is essentially the same in all three agreements. *See* Joint App. Vol. 1 at Tab A (Local 1599); Vol. 1 at Tab B (Local 2021); Vol. 2 at Tab C (Local 795). Citation will be to the collective bargaining agreement between AT&T and Local 1599, Joint Appendix Volume 1 at Tab A.

title, and interest in the Oklahoma City Works plant, where Appellants were employed, to Lucent. *Id*. AT&T also transferred, and Lucent agreed to assume, AT&T's rights and obligations under the CBAs.[2] *Id*; Vol. 1 at 91. On April 10, 1996, Lucent went public with an initial stock offering of approximately 112,037,037 shares. *Id*. On September 30, 1996, AT&T divested its remaining stock in Lucent. Thus, Lucent became an independent corporation as of October 1, 1996. *Id*; Vol. 1 at 91.

On October 9, 1996, Appellants Terry A. Garvin and John McGrail requested termination allowances, pursuant to Article 18 of the CBAs, in a letter to the President of AT&T, with a copy to the Unions. James Ikard (Ikard) submitted a request for termination allowances on behalf of members of the Unions generally. AT&T responded to Ikard on October 29, 1996, directing his concerns to Lucent. Lucent notified Ikard on November 1, 1996, that the concerns should be submitted under Lucent's open-door policy. Ikard notified Lucent that the dispute was with AT&T, not Lucent. On November 7, 1996, AT&T responded that concerns should be directed to either AT&T or Lucent. On February 6 and February 14, 1997, Appellants, over 600 employees of AT&T/Lucent, submitted requests for termination allowances to AT&T. (Joint App. Vol. I at 16.) On February 25, 1997, AT&T denied their requests. *Id*.

On March 25, 1997, Appellants filed this action pursuant to § 301 of the LMRA,

---

[2] The Appellants assert that there was no assignment clause in the CBAs permitting AT&T to transfer its interests and obligations to Lucent and that the Unions were not involved in the assignment and no vote was taken by the Unions' members to ratify the assignment. (Brief of Appellants at 6-7 ¶e-g.)

claiming that AT&T's divestiture of Lucent on September 30, 1996, "laid off" Appellants as the term is defined in the CBAs, entitling them to termination allowances pursuant to Article 18 of the CBAs.[3] *Id*. at 8 ¶9 & 12 and 41 ¶10 &14.

On November 19, 1997, the district court granted AT&T's motion for summary judgment. (Joint App. Vol. 3 at 1798-1807.) The district court found that it was not clear whether Appellants were required to submit their grievances through the Unions prior to seeking federal relief because the arbitration procedure outlined in Article 7 of the CBAs speaks only to disputes between the Unions and AT&T. *Id*. at 1800-01. Therefore, the court denied AT&T's motion for summary judgment based on failure to exhaust. *Id*. at 1801. In addition, the district court determined that even if Appellants were required to proceed through the grievance and arbitration procedures, raising their claims through the Unions would have been futile because AT&T considered the claims meritless and there were no AT&T representatives at the Oklahoma City Works facility in October, 1996. *Id*. at 1801-02.

On the merits, the district court granted summary judgment in favor of AT&T and Lucent. *Id*. at 1803-07. The court concluded that Appellants were not entitled to termination allowances because they were not "laid off" due to lack of work. *Id*. at 1806. The court found that there was no interruption in their employment, no risk of immediate unemployment, and their jobs before and after Lucent's divestiture were on comparable

---

[3] Appellants amended their complaint on March 31, 1997, to include a class action claim on behalf of themselves and as representative of others similarly situated. (Joint App. Vol. I at 39-46.) The class was never certified by the district court.

14

terms. *Id.*

On appeal, Appellants contend that the district court erred in granting summary judgment in favor of AT&T. Appellants assert that the district court: erred in finding the language in the CBAs regarding a termination allowance was unambiguous; improperly disregarded the language of the CBAs in determining whether they were "laid off" within the meaning of the CBAs; and improperly weighed the evidence in finding their employment with Lucent before and after its divestiture from AT&T was comparable.

AT&T responds that the district court did not err in granting summary judgment in its favor on the merits of Appellants' claims because Appellants did not suffer a termination in employment arising out of a reduction in force due to lack of work and, thus, had not been "laid off." However, AT&T contends the district court erroneously found that Appellants exhausted the required grievance and arbitration procedures outlined in the CBAs and/or erroneously excused Appellants' failure to exhaust on the ground of futility.

We review the district court's grant of summary judgment *de novo*. *Oberndorf v. City & County of Denver*, 900 F.2d 1434, 1437 (10th Cir.), *cert. denied*, 498 U.S. 845 (1990). "We review the record in the light most favorable to the non-moving party to determine if a genuine issue of material fact was in dispute; if not, we must determine if the substantive law was correctly applied." *Id.*

Discussion

I.

15

AT&T contends that the district court erred in determining that Appellants exhausted the grievance and arbitration procedures set forth in the CBAs and/or erred in excusing exhaustion based on futility. AT&T asserts Appellants failed to exhaust because the CBAs clearly provide that Appellants "may" initiate grievances through the Unions pursuant to Article 6 § 1(c), and the fact that it considered Appellants' claims to be without merit and intended to defend against the claims vigorously did not render the grievance and arbitration procedures futile.

It is well established that "an employee can only sue [under § 301 of the LMRA] if he or she has exhausted any exclusive grievance procedures provided in the collective bargaining agreement." *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 944 (10th Cir. 1989). *See Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1537 (10th Cir. 1995) (employee must exhaust administrative grievance procedure or show an exception before bringing a private judicial action). Exhaustion is excused when: (1) it would be futile; (2) the employer through its conduct has repudiated the grievance procedure itself; or (3) the union has prevented the employee from utilizing the grievance process by breaching its duty of fair representation. *Reynolds*, 69 F.3d at 1537 n.18; *United Food & Commercial Workers, Local Union No. 7R*, 889 F.2d at 945. *See Viestenz v. Fleming Cos., Inc.*, 681 F.2d 699, 701 (10th Cir.), *cert. denied*, 459 U.S. 972 (1982).

Here, the district court excused exhaustion on the grounds that: (1) it was unclear

whether Appellants were required under the CBAs to submit their grievances through the Unions and the arbitration process prior to seeking federal relief, and (2) exhaustion would have been futile. (Joint App. Vol. 3 at 1800-02.)

The CBAs provide that individuals may bring grievances against AT&T personally without involving the Unions or the individuals may have grievances presented for settlement by the Unions. (Joint App. Vol. I at 179, Art. 6 § 1(b) and (c).)

Article 6 § 1states:

(a)     To provide for the expeditious and mutually satisfactory settlement of grievances arising with respect to the interpretation or application of this Agreement or other terms and conditions of employment, the following procedures shall apply.

(b)     Any individual employee or group of employees shall have the right at any time to present matters in their own interest to the COMPANY and to have such matters adjusted, without the intervention of the UNION, as long as the adjustment is not inconsistent with this Agreement and provided the UNION has been given an opportunity to be present at such adjustment. Any such grievance shall be presented to the COMPANY'S Local Bargaining Agent.

(c)     When an employee or group of employees wishes to have a grievance presented for settlement by the UNION, such grievance shall, except as otherwise provided in this or any other written agreement between the COMPANY and the UNION, be presented as outlined below and settlement sought at any one of the steps indicated.

*Id*. at 179, Art. 6 §1(a)-(c). Pursuant to § 1(b), Appellants individually wrote letters to AT&T's president requesting adjustments on the issue of termination allowances. Appellants proceeded with their requests through the open-door policy as AT&T and Lucent requested and their requests were denied. The issue is whether Appellants were also required to bring

17

their grievances through the Unions after their grievances directly with AT&T were denied in order to exhaust the CBAs' grievance and arbitration procedures.

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). "[U]nless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf." *Id*. at 652-53.

In *Republic Steel*, the Court concluded that the employee, Maddox, failed to exhaust the mandatory grievance procedures of his contract. The contract provided,

> It is the purpose of this Section to provide procedure for prompt, equitable adjustment of claimed grievances. It is understood and agreed that unless otherwise specifically specified elsewhere in this Agreement grievances to be considered hereunder must be filed within thirty days after the date on which the fact or events upon which such alleged grievance is based shall have existed or occurred.
>
> Any Employee who has a complaint *may* discuss the alleged complaint with his Foreman in an attempt to settle it. Any complaint not so settled shall constitute a grievance within the meaning of this Section, 'Adjustment of Grievances'. 'Grievances shall be handled in the following manner: . . ..

*Id*. at 658 (emphasis added). The Court held that "the permissive 'may' did not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit." *Id*. at 658-59. Thus, the Court held that Maddox's

18

suit could not be entertained because he had not exhausted the grievance procedures, i.e., by waiting nearly three years to bring suit he had not complied with the 30-day time limitation. However, the Court acknowledged that "[t]he federal rule would not of course preclude [the employee's] court suit if the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy." *Id*. at 657-58. *See Viestenz*, 681 F.2d at 701 (employee's claim dismissed for failure to attempt use of mandatory, exclusive grievance procedure set forth in the collective bargaining agreement).

Here, there is no requirement in the CBAs that individual employees who grieve individually pursuant to Article 6 § 1(b) proceed through either the grievance steps outlined in Article 6 for grievances handled between the Union representative and the company or the arbitration procedures outlined in Article 7 expressly for "[a]ny dispute arising between the UNION and the COMPANY . . .." *Id*. at 184. Contrary to AT&T's contention, although employees "may" bring grievances through the Unions pursuant to Article 6 § 1(c), there is no language in the CBAs which requires employees to do so after they have grieved directly to AT&T/Lucent. *See, e.g., Republic Steel*, 379 U.S. at 658 ("Any complaint not so settled [through direct discussion with the Foreman] shall constitute a grievance within the meaning of this Section."). Article 6 § 1(b) and § 1(c) provide the employee alternative methods of grieving: directly to AT&T *without the intervention of the Unions* or through the Unions. In interpreting the language of the contract in this manner, employees as individual grievants are not allowed to avoid the procedures outlined in the CBAs in favor of judicial suit.

19

However, employees are allowed to choose which method of grieving they wish to pursue. To require employees to grieve through the Union after grieving directing to AT&T nullifies the plain language of Article 6 § 1(b). If the contracting parties had wished Article 6 § 1(b) to be an optional preliminary step in the grievance process and the grievance and arbitration process to be the exclusive remedy for all grievances, then they were obligated to so state. Thus, if an employee chooses to grieve pursuant to Article 6 § 1(b) and fulfils his or her obligations thereunder, the employee may bring suit following an adverse decision.

Therefore, we hold that Appellants exhausted the CBAs' grievance procedures as outlined in Article 6 § 1(b) as requested by AT&T before bringing their action pursuant to § 301 of the LMRA.[4]  We now proceed to the merits of Appellants' claims.

## II.

On the merits, Appellants contends that the district court erred in granting summary judgment in favor of AT&T and Lucent.  Appellants claim that the CBAs should be treated as ambiguous regarding their entitlement to termination allowances because of the interplay of the provisions of the termination allowance (Article 18), the definition of layoff (Article 3 § 1(g)), and the restrictions on payment of lump sum or periodic allowances (Article 18 §

---

[4]    We do not reach the district court's finding that exhaustion would have been futile due to our conclusion that Appellants exhausted their claims.  However, we believe that the futility exception to exhaustion requires more than an employer's characterization of the grievance claims as meritless and its willingness to defend against the claims vigorously.  *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976); *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182, 183 (10th Cir. 1978) ("Plaintiff's claims in this case, however, do not approach the 'clear and positive showing of futility' which we have stated need be made.") (quoting *Imel v. Zohn Mfg. Co.*, 481 F.2d 181, 184, (10th Cir. 1973), *cert. denied*, 415 U.S. 915 (1974)).

20

3(a)) with the lack of assignment clauses in the CBAs, the lack of the Unions' consent to the assignments, and the unique circumstances of AT&T's divestiture of Lucent. In the alternative, Appellants assert that if the language of the CBAs is unambiguous, the district court erred in disregarding the terms of the CBAs and applying case law arising out of different circumstances and contractual contexts.

Article 18 provides that "[a]n employee LAID OFF shall be granted a Termination Allowance . . ." unless "[t]he employee is recalled or re-employed as a regular employee by AT&T or any of its affiliates, subsidiaries or entities." (Joint App. Vol. 1 at 257-58, Art. 18 §§ 1 & 3(a)(2)(ii).) "Laid off" is defined as "[a] termination of employment arising out of a reduction in the force due to lack of work." *Id.* at 162, Art. 3 § 1(g). Appellants submit that they were "laid off" by AT&T on October 1, 1996, when AT&T divested Lucent. Therefore, Appellants argue they were entitled to termination allowances. We are not persuaded by Appellants' contentions.

By its plain language, the termination allowance provision does not entitle Appellants to recover. Only employees "laid off due to lack of work" were entitled to termination allowances. When an employee retains his or her job despite a transfer, he or she has not suffered for "lack of work." *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1276 (10th Cir. 1994). AT&T's divestiture of Lucent did not result in any disruption of employment. On September 30, 1996, Appellants worked for Lucent as a subsidiary of AT&T. On October 1, 1996, Appellants worked for Lucent as an independent corporation. There was no

21

cessation in operations or unemployment due to "lack of work." *See Fuller v. FMC Corp.*, 4 F.3d 255, 259 (4th Cir. 1993) (plaintiffs not "terminated" and, thus, not entitled to severance benefits where they experienced no unemployment or loss of income by reasons of plant's transfer in ownership), *cert. denied*, 510 U.S. 1115 (1994); *Allen v. Adage, Inc.*, 967 F.2d 695, 701-03 (1st Cir. 1992) ("employees who, coincident with their separation from service, began comparable employment at comparable wages" with successor company not entitled to severance benefits for "reduction in force"); *Awbrey v. Pennzoil Co.*, 961 F.2d 928, 931-32 (10th Cir. 1992) (employees not entitled to severance pay where none of them missed any work or suffered any loss of income when accepted comparable jobs with purchasing company); *Bradwell v. GAF Corp.*, 954 F.2d 798, 800 (2d Cir. 1992) ("Where an employee is kept in his or her job because, despite a change in ownership, there is no lack of work, that employee cannot accurately be described as 'permanently laid off because of lack of work.'"); *Rowe v. Allied Chemical Hourly Employees' Pension Plan*, 915 F.2d 266, 269 (6th Cir. 1990) (Employees' "separation from Allied and immediate employment with Armco upon the sale of the Ashland plant did not constitute a layoff."); *Sejman v. Warner-Lambert Co., Inc.*, 889 F.2d 1346, 1347 (4th Cir. 1989) (employees transferred to successor corporation were not "terminated by the Company as a result of job elimination"), *cert. denied*, 498 U.S. 810 (1990).

In the term "laid off" is the understanding that the affected employees no longer hold the same jobs they did prior to being laid off. *Headrick*, 24 F.3d at 1276. Appellants

22

contend that their jobs with Lucent, as an independent company, are not comparable to their jobs with Lucent as an AT&T subsidiary, claiming that: (1) they lost the right to transfer within AT&T's system through a self-nomination process; (2) their risk of termination was increased; (3) their telephone equipment discount was discontinued; (4) their $ 50.00 per month long-distance telephone credit will not be renewed when the contract expires; and (4) the interest rate on their AT&T credit cards increased to that of other cardholders.[5]

Appellants' contentions show there were minor changes in their fringe benefits received from Lucent before and after divestiture.[6]  However, minor changes in fringe benefits are not sufficient to establish a genuine issue of material fact on whether their employment was comparable.  *See Awbrey*, 961 F.2d at 931 (new employer's "employment benefits differed somewhat, but the differences are minor and do not cause the jobs to be incomparable").  As we noted in *Awbrey*, "comparable" does not mean "identical." *Id.*

The course of operations and Appellants' comparative advantages and disadvantages under either employer, however, are not the sole indicators of whether their jobs are comparable.  *See Thorpe v. Retirement Plan of Pillsbury Co.*, 80 F.3d 439, 443 (10th Cir. 1996).  In *Thorpe*, we examined the rights and liabilities assumed by the successor company

---

[5]     Appellants also state that "retirees that never worked for any company other than AT&T and retired prior to the creation of Lucent" receive pension checks from Lucent rather than AT&T.  (Brief of Appellants at 11.)  This information is immaterial, however, to whether Appellants' jobs, before and after the divestiture of Lucent, are comparable as all Appellants were employed at the time of the divestiture. *See id*. at 2.

[6]     In fact, Appellants characterize these changes as "Minor Changes" in their opening brief to this court.  (Brief of Appellants at 10.)

regarding the contractual relationship between the seller and the employees. *Thorpe*, 80 F.3d at 443. We held that Thorpe's "good fortune in finding employment in the same plant does not change the fact that the transfer of the Ogden plant to Cargill resulted in a fundamental shift in the rights and liabilities under [his] contractual relationship with [Pillsbury], not the least of which was he was no longer employed by Pillsbury." *Id.* We noted that the purchase agreement between Pillsbury (the seller) and Cargill (the buyer) "did not provide for a transfer of the collective bargaining agreements with the Union; did not require Cargill to hire any past Pillsbury employee or observe any of Pillsbury's past terms and conditions of employment, . . .; and most importantly, refused to transfer the liabilities associated with Pillsbury's Retirement and Welfare Plans, . . .." *Id.* at 443-44. In contrast, it is undisputed that Lucent assumed *all* AT&T rights, interests, liabilities, and obligations, including the CBAs, upon the transfer of the Oklahoma City Works facility to Lucent on February 1, 1996. As such, Appellants' jobs with Lucent before and after its divestiture from AT&T are comparable.

In furtherance of their claim, Appellants contend that AT&T paid termination allowances to employees upon the sale of its Phoenix Works facility regardless of whether the employees found jobs with the buyer or another company. Appellants admit that AT&T issued WARN Act[7] notices announcing its intention to terminate employment of its

---

[7]     The WARN Act, 29 U.S.C. §§ 2101-2109, requires large employers who are either closing a plant or instituting mass layoffs to provide sixty-days advance notice to those employees who will be laid off or who will have their hours substantially reduced. *Frymire v. Ampex Corp.*, 61 F.3d 757, 761 (10th Cir. 1995), *cert. denied*, 517 U.S. 1182 (1996).

employees at the Phoenix facility due to its sale of the facility to CSI. (Brief of Appellants at 8 ¶1(b).) *See* Joint App. Vol. 3 at 1786-87. The notices also stated that AT&T anticipated that all employees would be retained by CSI. (Joint App. Vol. 3 at 1786-87.)

In this case, however, Appellants were not "terminated" or "laid off" due to the divestiture of Lucent from AT&T, no WARN Act notices were issued, and Appellants' continued employment with Lucent was never in doubt. As the court in *Bradwell* explained:

> The allowance of severance pay even if an employee takes another job does not alter the basic eligibility requirement. Employees kept on by a plant owner's successor are in a different position from those who are laid off but find alternate employment. The former are not faced with the same risk of unemployment as are those who are permanently laid off because of lack of work. The Policy provision ensures that those laid off will not be discouraged from seeking alternative employment; it does not place appellants [who continued their jobs with the successor company] in the same position as laid off employees who may or may not find other jobs.

*Bradwell*, 954 F.2d at 800. Thus, while an employee who is "laid off" due to lack of work but is fortunate enough to find a fully equivalent job on his own the next day is entitled to benefits, an employee who is simply transferred from one owner to another without any of the concomitant risks of unemployment or changes in job duties and benefits is not. *See Headrick*, 24 F.3d at 1277. *See e.g. Thorpe*, 80 F.3d at 443 (employee *laid off* and then *hired* by new owner entitled to severance pay).

Appellants became Lucent employees on February 1, 1996, when AT&T transferred its assets and liabilities, including its obligations under the CBAs, to Lucent. At that time, Appellants were not entitled to termination allowances pursuant to Article 18 § 3(a)(2)(ii)

because Lucent was a wholly owned subsidiary of AT&T.[8] On October 1, 1996, Appellants' employer did not change, but their employer's status as a subsidiary company changed to that of an independent corporation. As such, Appellants were not "laid off" by AT&T on October 1, 1996, inasmuch as they already worked for Lucent on that date. Their employment with AT&T ended on February 1, 1996.

For the foregoing reasons, the district court's order of November 20, 1997, granting summary judgment in favor of AT&T is AFFIRMED.

**AFFIRMED**.

---

[8] Appellants concede in their reply brief in response to AT&T's failure to exhaust claim that "[u]ntil October 1st plaintiffs were not entitled to a termination allowance and had no basis for such a request." (Reply Brief of Appellants at 10.)